# Karpeles *v.* City Ice Delivery Co.

### Death Action.

(Decided April 3, 1916.   Rehearing denied December 30, 1916.
73 South. 642.)

1. **Evidence; Opinion.**—A witness may not give his conclusions as to the merit of the ultimate issue to be tried by the jury.

2. **Depositions; Objections; Time.**—Where the incompetency and illegality of such evidence was apparent on the face of the deposition, an objection to such evidence may be made at any stage of the trial.

3. **Same.**—An objection to portions of a deposition which contains the mere conclusions of the witness as to the merit of the ultimate issue of the trial was not waived by a failure to object before trial.

4. **Evidence; Irrelevancy.**—Testimony of a witness by deposition that the witness was a Confederate veteran was irrelevant and immaterial and properly excluded; the action being for wrongful death of another.

5. **Motor Vehicle; Injury by Collision; Instructions.**—Where the action was for wrongful death by collision, charges asserting that the driver of an automobile was entitled to presume that riders of motorcycles would not attempt to cross street intersection at an unlawful rate of speed, or at a rate of speed so great as to render them unable to avoid striking vehicles, and that such motorcycle drivers and other persons using the street would conform to the laws of the city were proper.

6. **Appeal and Error; Review; Reserving Ground.**—Reversible error cannot be predicated upon the giving of correct instructions on the ground that such instructions are misleading, unless the adversary party requests explanatory charges.

[Karpeles v. City Ice Delivery Co.]

**7. Same; Harmless Error; Instructions.**—The giving of instructions which tend to mislead will not cause a reversal unless it is manifest from the record that the jury was in fact misled to the prejudice of the appellant.

**8. Municipal Corporations; Ordinances; Use of Street.**—Under an ordinance requiring vehicles in turning to the left from one street into another to keep to the right of the center of intersection, if one side of the street is so obstructed as to be impracticable for use in ordinary travel, a vehicle is required only to keep to the right of the center of intersection of the currents of travel as defined and determined for practical purposes by the customary use of street.

**9. Same; Collision; Obstruction.**—Where the action was for wrongful death alleged to have been caused by a collision with the automobile of the defendant while his automobile was on the wrong side of the street and the evidence showed that the right portion of said street was customarily used and occupied by a railroad company and others in handling freight, such use and occupation will not be presumed to be unlawful where there is no evidence to that effect.

**10. Same; Ordinances; Construction.**—Ordinances are to be construed according to common sense and so as to give effect to the purpose of their adoption.

**11. Same; Use of Street; Injuries.**—The driver of an automobile or other vehicle may leave the prescribed route of travel on a street in order to avoid an obstacle otherwise unavoidable and may within reason stop and stand without being held negligent and liable for resulting accident.

**12. Same; Use of Street; Turning to Right.**—The driver of an automobile is not negligent as a matter of law in turning to the left from one street into another without first crossing to the right of the inersection of the two streets, where the right side of the street was so given over to the loading and unloading of freight cars that other travel on that part of the street was unusual and impracticable.

**13. Same.**—Where a portion of a street is so used and occupied by drays and wagons that other traffic flows along the other side of the street, the fact that at the time of the collision between the automobile and motorcycle on which plaintiff's intestate was riding, there were no drays or wagons on the right side of the street could not affect defendant's right and duty nor charge him with negligence.

**14. Negligence; Imputed; Driver and Passenger.**—A person riding on a motorcycle as a guest of the driver and not directing or controlling the operation of the motorcycle is not chargeable with the contributory negligence of the driver resulting in injury to the passenger.

**15. Motor Vehicles; Collision.**—The charges on the issues of negligence and contributory negligence examined, and held proper under the facts in this case.

**16. Same.**—Automobiles are not dangerous per se and their driver is required to use only such ordinary and reasonable prudence, care and watchfulness as is commensurate with the danger to be apprehended from the surroundings at the particular time; the rule applicable to railroads requiring the highest degree of skill and diligence known to skillful and diligent engaged in that business not being applicable to the operation of automobiles.

**17. Death; Action for; Damages.**—In action for wrongful death under § 2486, Code 1907, the damages are punitive to prevent homicides.

[Karpeles v. City Ice Delivery Co.]

18. **Same.**—Where the action was for wrongful death, brought under § 2486, Code 1907, and the death was alleged to have been caused by a collision between the automobile of the defendant and a motorcycle, the conduct of driver of motorcycle, with whom the decedent of plaintiff was riding, may be taken into consideration in determining the character of the offense and assessing the punishment by way of damages.

19. **Evidence; Weight.**—In determining the weight to be given to the testimony the jury may consider the conflict between testimony of a witness and the physical facts of the case.

20. **Appeal and Error; Harmless Error; Instruction.**—The omission in a charge to state that the conflict hypothesized should be considered in connection with all of the other testimony in the case merely renders the instruction misleading or argumentative and called for an explanatory charge from the adversary party.

21. **Charge of Court.**—Where there was no evidence connecting one of the defendants with the tort, they being sued as joint tort feasors, a charge to return a verdict for such a defendant if the jury believe the evidence, was proper.

McClellan, Somerville and Gardner, JJ., dissent in part.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Max Karpeles as administrator against the City Ice Delivery Company for damages for the death of his intestate in a collison with an automobile. Judgment for defendant, and plaintiff appeals. Affirmed.

The facts made by the complaint are that, while Nathan Lowenstein was upon a motorcycle upon a public street in the city of Birmingham, an automobile in charge or control of defendants upon said public street ran into or against the motorcycle, so injuring intestate that he died. The first count alleged the negligence in a general way. The second count alleges negligence in that defendant's servant or agent in charge or control of said automocile on the occasion aforesaid, while acting within the line and scope of his authority as such servant or agent, wantonly or intentionally caused the death of plaintiff's intestate by wantonly and intentionally causing or allowing said automobile to run upon or against said vehicle on which intestate was, well knowing that to do so would likely or probably cause great personal injuries to or death of plaintiff's intestate. The pleas were not guilty, and contributory negligence: First, in that said motorcycle was run recklessly on the street, and driven at a greater speed than 16 miles per hour against an ordinance of the city of Birmingham, then in force and effect; second, that the motorcycle was being operated and run by one H. C. Brown, and

that plaintiff's intestate was riding on said motorcycle behind said Brown, and knew when he mounted said motorcycle that said Brown was likely to operate said motorcycle across street intersections, and with such knowledge intestate negligently mounted said motorcycle, and negligently rode behind said Brown, as a proximate consequence of which he was injured.    Other pleas set up the same thing in varying phraseology.    The following charges were given at the request of defendant:

(F)  The court charges the jury that the driver of the automobile in question, when he attempted to turn into Avenue E, had the right to presume that riders on motorcycles would not attempt to cross the intersection of Twenty-First Street and Avenue E at a rate of speed greater than 8 miles per hour.

(L)  Same as (F), except "at a rate of speed as to be unable to prevent striking vehicles passing such intersection."

(P)  The driver of an automobile when turning from one street to another has the right to presume that all other persons using the street will conform to the laws of the city, and such driver has the right to presume and act thereon, until it otherwise appears.

(R)  If you believe from the evidence that the south side of Avenue E, by reason of its use as a team track, was not open to ordinary traffic, then I charge you that it was no violation of the ordinance for the driver of defendant's car to turn into Avenue E, after having passed the center of the intersection of Twenty-First street, and that part of Avenue E which is open to ordinary traffic.

(C)  The court charges the jury that if they believe from the evidence that the driver of the automobile was running at a reasonably prudent rate of speed and attempted to turn into Avenue E in a reasonably prudent manner on the occasion complained of, you should return a verdict for defendant.

(D)  The court charges the jury that if you believe from the evidence that the driver of defendant's automobile did what an ordinarily prudent man would have done under similar circumstances, you cannot find for plaintiff.

(J)  The court instructs the jury that the driver of defendant's automobile before turning into Avenue E had a right to presume that any automobile or motorcycle coming from the opposite direction would not attempt to go over the crossing at Avenue E at a greater rate of speed than 8 miles per hour, and

[Karpeles v. City Ice Delivery Co.]

if you believe from the evidence that the motorcycle upon which plaintiff's interstate was riding attempted to make the crossing at a greater rate of speed than this, and that this act was the sole proximate cause of the collision, and of plaintiff's intestate's death, your verdict will be for defendant.

(K) Before plaintiff will be entitled to recover on account of any violation of the ordinance with reference to turning from one street into another, such violation of the ordinance must have been the direct cause of the accident, and if, when the driver made his turn, the motorcycle were not then in view, but thereafter ran into the automobile at a high rate of speed, defendant would not be liable for the violation of such ordinance, even if there was a violation.

(17) If H. C. Brown, the driver of the motorcycle, was racing the motorcycle across Avenue E, and ran into the automobile because of the great speed at which the motorcycle was moving, and that this was the sole and proximate cause of the action, your verdict should be for defendant.

(G) Even if the jury should believe from the evidence that defendant's agent or servant was negligent in or about the operation of defendant's automobile at the time and place alleged, yet their verdict must be for defendant if they further find from all the evidence that the sole proximate cause of the collision and consequent death of plaintiff's intestate was the high rate of speed of the motorcyle on which plaintiff's intestate was riding at or near the place of the collision.

(M) If you believe from the evidence that the motorcycle upon which plaintiff's intestate was riding was running at a greater rate of speed at the time of the collision between it and defendant's automobile than is permitted by the ordinances of the city of Birmingham, and that such excessive rate of speed was the sole proximate cause of plaintiff's intestate's injuries and death, your verdict must be for defendant.

(2) If the jury believe from the evidence that H. C. Brown ran his motorcyle across Avenue E on the occasion complained of at a high and dangeroue rate of speed, and that this was negligence on his part, and was the sole proximate cause of the injury, your verdict must be for defendant.

(H) The burden of proof is upon plaintiff to show that the proximate cause of plaintiff's injuries and death was the direct result of the negligence of the driver of defendant's automobile; if you are not reasonably satisfied from all the evidence that

[Karpeles v. City Ice Delivery Co.]

plaintiff had proven such negligence on the part of defendant's driver of the automobile, your verdict must be for defendant.

(1) The imposition of damages in this case would be by way of fine against defendant, and if the jury believe from the evidence that the circumstances surrounding the accident do not warrant the imposition of a large fine, then the jury could not, under the law and the evidence, impose such a fine.

(8) The damages in this case are solely by way of punishment, and the jury has the right to take into consideration all the facts and circumstances surrounding the accident, the speed of the automobile, the speed of the motorcycle, the conduct of the driver of the automobile, and the conduct of the driver of the motorcycle on the occasion complained of in determining whether or not a large or small fine shall be assessed against defendant in the event a verdict is returned against defendant.

(6) You are authorized to take into consideration the physical facts and circumstances surrounding the accident, and if the testimony of any witness is in conflict with such physical facts, then the jury may take into consideration such conflict in determining what weight they will give to the testimony of such witness.

(O) If you believe the evidence you must return a verdict for defendant the Birmingham Ice Factory Company.

SAMUEL B. STERN and HARSH & HARSH, for appellant. STOKELY, SCRIVNER & DOMINICK and THATCH & UNDERWOOD, for appellee.

. SAYRE, J.— (1-4) Appellee's objections to some expressions in the deposition of the witness Fletcher, made for the first time when the deposition was offered in evidence, were sustained in the court below, and these several rulings are assigned for error. The deposition had been taken on oral interrogatories. Attorneys for appellee, defendant below, had refused to take part in the examination, and at the trial objected to the deposition as a whole, on the ground that the commission had been issued in a case not authorized by statute; but we doubt that this objection was tenable, and shall pass it by without comment, our opinion being that the rulings against specific parts of the deposition were free from reversible error—this, so far as concerns the nature of the facts sought to be proved by the several excerpts objected to, the mere conclusions of the witness going to the

merits of the very issue to be tried by the jury, on the authority of *Alabama City, G. & A. Ry. Co. v. Heald*, 178 Ala. 636, 59 South. 461, and cases there cited. The objections to these parts of the depositions were not unduly delayed within the rule of *Forehand v. White Sewing Machine Co.*, 195 Ala. 208, 70 South. 147. Their incompetency and illegality, with one exception, were apparent upon their face; and the practice is well settled that such evidence may be excluded at any stage of the trial.—*Whildren v. M. & P. Nat. Bank*, 64 Ala. 1, 38 Am. Rep. 1. The statement of the witness that he was a Confederate veteran was wholly irrelevant and immaterial. No error can be visited upon the trial court for its exclusion.

(5) The naked legal propositions of charges F. L, and P, given at the request of defendant, were correct. Translated in the light of the case presented by the evidence, these charges meant simply that no rule of due care required the driver of defendant's automobile to regulate his own conduct in turning from one street into another with reference to the possibility that motorcycles would be driven across his path at such a rate of speed as to be unable to prevent striking vehicles crossing the intersection or in violation of the municipal ordinance which prohibited any person to drive any motor vehicle on or across any intersection of two or more public streets at a greater rate of speed than 8 miles an hour. It is true, of course, that this principle could be of no service to defendant if as matter of fact its agent in charge of the automobile drove it from one street into the other in violation of the ordinance requiring that "any vehicle, on turning into another street to the left, shall keep to the right of the center of the intersection," otherwise negligently, and if, further, such negligence was a proximate cause of the death of plaintiff's intestate. Defendant's contention was that its agent had not violated the ordinance as fairly construed with reference to the situation at the place where the accident occurred, nor had he been guilty of negligence of any sort, and, further, that if there was a technical violation of the ordinance, that dereliction on the part of its agent was not a proximate cause of intestate's death, but that his death was to be attributed properly to the great speed at which the motorcycle was driven as its sole proximate cause; and these contentions had substantial support in the evidence, that is, the evidence for defendant went to show that its automobile, after moving south along Twenty-First street as prescribed by ordinance, turned prudently and at

[Karpeles v. City Ice Delivery Co.]

lawful speed to the left towards Avenue E; that on Avenue E between Twenty-First and Twenty-Second, the next street to the east, the Belt Line Railroad maintained and used two lines of track; that the south or team track was used for the delivery of freight from cars to wagons and drays which stood while receiving it in that part of the avenue between the south track and the adjacent curb, thereby frequently, or almost constantly as some of the witnesses stated the case, destroying the convenient or even possible use of the south side of the avenue by vehicles passing through between the intersecting streets, so that, in practical effect, the north side constituted the way for vehicles passing through in both directions and was customarily so used; that one or two freight cars were standing on the south or team track at the time; that defendant's automobile was on or between the tracks, probably astride the north rail of the south track, and close to the line of the east curb of Twenty-First street as projected across Avenue E, when it was struck broadside by two motorcycles moving at great and unlawful speed from the south. Plaintiff's intestate was riding tandem on one of the motorcycles —that is, he was on a seat behind the driver. By the impact both intestate and the driver with him were thrown over the raised top of the automobile into the street beyond, whereby plaintiff's intestate was instantly killed.

(6, 7) The charges under consideration took no account of the tendencies of the evidence for defendant to which we have referred or the countervailing testimony for plaintiff. They were not designed to deal so comprehensively with the facts of the case, nor, for that matter, did they deal with any facts at all except the one, to which they did not refer otherwise than by an inferred hypothesis, that the drivers of the motorcycles may have crossed the intersections of the streets at an unlawful and negligent rate of speed. These charges assumed nothing as to the facts; nor did they purpose to make the result of the case turn upon the legal proposition which they stated. They left room for the operation of correlated principles of law, which were of necessary consideration, and were, we must presume, elsewhere sufficiently stated by the court to the jury. They stated presumptions on which defendant's agent was entitled to act, correct propositions of law, as we have said, and if plaintiff apprehended a tendency to mislead by reason of the absence of correlated propositions, the rule is well settled that such tendency should have been met by a request for an explanatory charge

(2 Mayf. Dig. p. 573, § 214), and that causes shall not be reversed for the giving of charges merely having a tendency to mislead unless it is manifest upon the record that the jury has been in fact misled to the prejudice of appellant.—*Goldsmith v. McCafferty*, 101 Ala. 663, 15 South. 244.

(8-13) Referring to the above-stated tendencies of the evidence, we are not of opinion that a reasonable construction of the ordinance, providing that vehicles when turning to the left from one street into another should keep to the right of the center of the intersection, when viewed in connection with the peculiar situation presented by the customary use of Avenue E, required of defendant's automobile that it should do more than keep to the right of the center of the intersection of the two currents of travel as defined and determined for practical purposes by the customary and almost constant use of Avenue E—a manner of use imposed upon it by the presence of the railroad tracks and the customary use to which they were given. It cannot be assumed, in the absence of evidence on the point, that the customary use of Avenue E by the railroad company and persons receiving freight from its cars was unlawful. Ordinances are to be construed according to common sense and so as to give effect to the purpose of their adoption. The evident purpose of that part of the ordinance requiring vehicles to turn to the right of the intersections of streets, like its complementary provision requiring all vehicles, except when passing a vehicle, to "keep reasonably near the right-hand curb," is to keep vehicles turning to the left from one street into another moving at all times, as far as practicable, with the current of travel. In the circumstances here shown by the tendencies of defendant's evidence, assuming, as the jury were authorized to find, that the automobile passed at a lawful rate of speed to the left of the center of the intersection of the streets as laid off, but to the right of the intersection of the streets as defined by their customary use, it cannot be said that the driver of defendant's automobile by his course did not better serve the purpose of the ordinance and the rule of due care prescribed by it. Ordinary prudence required him to take account of the customary use of the avenue between Twenty-First and Twenty-Second streets. Accurately enough for practical purposes it may be said on the evidence in this case that Avenue E between the two streets was divided into three zones: The north given over to vehicles passing from one street to the other; the middle to the railroad; the

south to wagons and drays passing to and from cars and stopping
to receive freight.    Motion is the general law of the road, but
this law, like the rule of the ordinance, is subject to limitations
imposed by reason and necessity.    The driver of a vehicle may
leave the prescribed route to avoid an obstacle otherwise unavoid-
able, and within reason he may stop and stand.    By parity of
the reason, we think, if the south side of Avenue E had by custom
and constant use been so given over to the unloading and hauling
of freight from cars that stood therein as to close that part of it
to ordinary traffic, substantially as hypothesized in charge R, the
driver of defendant's automobile was not chargeable with negli-
gence per se in yielding to the custom which directed his move-
ment to that part of the avenue north of the railroad tracks.
Assuming the presence of cars upon the team track of the rail-
road and the customary and almost constant use of the avenue as
defendant's evidence tended to show, and the general effect of
these facts to close the south side to ordinary traffic granted
according to the hypothesis of the charge, defendant's right and
duty in the premises were not affected by the fact that at the
moment there may have been no drays or wagons on the south
side of the avenue.    In view of the conditions generally prevail-
ing and the custom which grew out of them, as we may assume,
it would seem reasonable to say that the turning of the automo-
bile across the intersection in the manner approved by the charge
was not in violation of the spirit and purpose of the ordinance
which sought to avoid confusion and its attendant danger and
inconvenience by so providing that vehicles would, as far as prac-
ticable, move along uniform and generally understood lines of
travel.    We hold, therefore, that there was no error in giving
charge R as requested by defendant.    Appellant devotes much
of his argument to criticising the charge as assuming facts that
should have been left to the jury.    As we read the charge, the
application of its proposition of law is left to depend upon the
jury's belief from the evidence that the facts existed, that is,
upon a finding of the facts, of which the charge predicates a
certain legal consequence.    It may be conceded that the charge
is capable, on microscopic examination, of a possible construction
that would make it appear to assume that defendant's automo-
bile did pass the center of the streets as defined by ordinary
traffic to the left, that is, as provided by the reasonable con-
struction of the ordinance; but that is by no means its most
obvious construction, and there appears upon the record no rea-

[Karpeles v. City Ice Delivery Co.]

son for apprehending that the jury did so construe it. In other words, if the charge was defective at all, it was defective merely because capable of misleading tendency.

(14, 15) A number of the charges, given for defendant and assigned for error by plaintiff, asserted in substance that, if the speed of the motorcycle upon which plaintiff's intestate was riding, or the negligent operation of the motorcycle, was the sole proximate cause of the death of plaintiff's intestate, or if the alleged violation of the ordinance by defendant's agent did not contribute directly to his death, then defendant was not liable. If defendant's agent exercised due care, then of course the death of plaintiff's intestate must be referred to the negligence of the driver of the motorcycle, or, in the absence of that, to inevitable accident. Possibly and very reasonably the jury may have found that, even if defendant's automobile did not observe the literal mandate of the ordinance in turning from one street into the other, its divergence from the proper course, even though determined by reference to the intersection of the streets as laid off, was so slight that the result would not have been different had it followed its technically proper course. Plaintiff's intestate was moving along Twenty-First street, and was concerned about the use of that street only. He had no interest in the use of Avenue E between Twenty-First and Twenty-Second streets except as that use affected the momentary location on Twenty-First street of vehicles turning to the left from the street into the avenue immediately before leaving the street. In the peculiar circumstances of this case, it appearing beyond question that the motorcycle ran into the side of the automobile, the question, so far as plaintiff's intestate in his situation was concerned, is, not so much whether the automobile turned the center of the intersection correctly, but whether its manner of turning made any difference in the result. It would be unreasonable to hold defendant answerable for the consequence of the motorcycle running into the automobile on the ground that the latter violated the ordinance by cutting a few inches, or even feet, across the imaginary corner of prohibited territory if for all practical purposes it would have been in the same place and the same result would have followed had it observed the letter of the ordinance by barely shaving the corner. But without regard to the possibility of such finding, the charges were correct, for the jury may have found that defendant's driver was not at fault in any respect. It scarcely needs to be said that we have not overlooked

[Karpeles v. City Ice Delivery Co.]

the fact that plaintiff's intestate was, as the witnesses put it, a "guest" upon the motorcycle, not directing or controlling its operation, and hence not chargeable with the driver's contributory negligence. In either of the cases we have pointed out as of possible finding under the evidence, the operation of the motorcycle, whether negligent or not, must be held to have been the sole proximate cause of the accident.—*Birmingham Railway Co. v. Ely*, 183 Ala. 382, 62 South. 816. For these reasons we hold that there was no error in giving the charges J, N, K, 17, G, M, 2, and H, to which we refer in the order of their presentation by the record and the arguments of counsel.

(16) We are satisfied with the statement of the rule of due care in the operation of automobiles laid down by the trial court in charges C and D. Plaintiff would have had the court apply the rule which, for the conservation of human life, exacts of railroad companies the highest degree of skill and diligence known to skillful and diligent persons engaged in that business. That rule is derived from consideration of the great speed with which the public demands that railroad trains shall be operated, the overwhelming momentum they acquire in motion, and the peculiar skill necessary in their operation. As for automobiles, nowadays no form of vehicle is so common on much frequented highways. They are driven by everybody and go everywhere. They are not dangerous per se. Some training is required for their operation, but that is a simple matter and easily acquired. The danger from them arises from the temptation to speed they seem constantly to present. Driven with the ordinary prudence of a careful person they are as safe as any form of conveyance. Ordinary, reasonable prudence in every case requires that care and watchfulness should be commensurate with the danger to be apprehended from the surroundings at the particular time. Such we think is the rule that should be applied to the drivers of automobiles. It is the rule laid down in charges C and D, and our opinion is that they were not erroneously given.—*Maybank v. Reaves*, 193 Ala. 614, 69 South. 137.

(17, 18) This action is brought under the "Homicide Act," § 2486, of the Code. Damages under this statute are punitive, to prevent homicide; by measure they are such as the jury deem just under all the circumstances. Perhaps it is of no importance now whether charges 1 and 8 were properly given, since they affected only the measure of recoverable damages, and the jury have decided that none were recoverable, presumptively on the

[Karpeles v. City Ice Delivery Co.]

ground that defendant's agent was guilty of no negligence, or, if guilty, that his negligence did not contribute proximately to the death of plaintiff's intestate. However, since damages, in the event of a recovery, were to be assessed for punishment only, and just punishment could only be assessed with a view to all the conditions surrounding and affecting the act of defendant's agent at the time, we see no reason why the conduct of the drivers of the motorcycles, who were driving in concert, should not be taken into consideration in determining the degree and character of the offense, if any, proved against the driver of the automobile, and its appropriate punishment. This conclusion does not involve the imputation of the negligence of his driver to plaintiff's intestate as a means of defeating recovery, but would properly allow the jury, in the event of a finding for plaintiff, to visit upon defendant only such measure of punishment as the moral quality of the act of its agent might seem to demand. This is the just and reasonable meaning of the statute as it has been heretofore interpreted in this court.—*Randle v. Birmingham Railway Co.*, 169 Ala. 314, 53 South. 918.

(19, 20) Charge 6 states a correct proposition of law and common sense. The jury certainly had a right to consider the conflict between the testimony of any witness and the "physical facts" in determining what weight they would give to the testimony of the witness. If the instruction was not ideally perfect in that it omitted to say that the conflict hypothesized should be considered in connection with all the other testimony in the cause, and if for that omission the instruction might have been refused without error, still the omission rendered the instruction at worst merely misleading or argumentative, and called for correction by an explanatory charge, rather than by a reversal on appeal.

(21) Charge 9 was clearly correct. There was no evidence to connect the Birmingham Ice Factory with the operation of the automobile. The driver was the agent of the alleged joint tortfeasor, the City Ice Delivery Company, and was not shown to have had any connection with the Birmingham Ice Factory, a different corporation.

The case as against the City Ice Delivery Company was one for jury decision, and, no error having affected the manner of its trial by the court, there was no error in overruling the motion for a new trial.

[McCalley v. Finney.]

Finding no reversible error, the judgment is affirmed. Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

### ON REHEARING.

SAYRE, J.—Application for rehearing overruled.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur. McCLELLAN, SOMERVILLE, and GARDNER, JJ., dissent as to charge R. McCLELLAN, J., also dissents on the questions of evidence.