(94 South. 78)

## CRESCENT MOTOR CO. et al. v. STONE.
(6 Div. 508.)

(Supreme Court of Alabama.   May 11, 1922. Rehearing Denied June 30, 1922.)

1. Pleading  ⊂⇒64(2)—Count in suit against corporation and individuals for causing death held in case, and not to join trespass and case in single count.

In an action against a corporation and individuals for death of plaintiff's son, a count, alleging defendants wantonly and wrongfully caused his death by causing or allowing an automobile operated by defendants to run upon or against or over said minor on occasion aforesaid, well knowing that so to do would likely or probably cause great personal injury, etc., was in case and not trespass, and not objectionable as joining improperly trespass and case in a single count.

2. Corporations  ⊂⇒518(1)—Evidence of corporation's authorization or ratification of alleged participation in wrong causing death held necessary to support count against it and individual defendants.

In an action against a corporation and individuals, wherein a count alleged defendants wrongfully caused the death of plaintiff's decedent, evidence of corporate authorization or ratification of the averred participation of the corporate defendant in the wrong was essential to support the count.

---

**3. Pleading** ⊚⟹64(2)—**Count in suit against corporation and individuals for death held in case, and not to misjoin trespass and case in single count.**

A count in an action against a corporation and individuals, alleging the "servant or agent of the defendants" who had control of an automobile operated by defendants, acting within the line and scope of his authority as such servant, or agent in charge or control of said automobile on the occasion referred to, wantonly and wrongfully caused the death of plaintiff's minor son by wantonly and wrongfully causing or allowing said automobile to run upon or against or over said minor son on the occasion referred to, well knowing that so to do would likely or probably cause great personal injury, etc., was in case, and not offensive to the rule against misjoinder of trespass and case in a single count, since the "servant or agent of defendants" to whom the count ascribed the tortious act, was alleged to be a joint servant of the three defendants, and to sustain this averment the proof must have tended to show that the servant causing the injury was the joint agent or servant of all defendants.

**4. Witnesses** ⊚⟹374(2)—**Witness' private conversation with defendants held not to show bias and immaterial and insufficient basis for impeachment.**

That a witness for defendants sued for death had a private conversation with them at the inquest did not tend to show bias affecting his credibility, and a question as to his having had such a conversation was immaterial, so that it was error to permit it to become a basis for testimony designed to impeach him.

**5. Highways** ⊚⟹184(4)—**Instruction as to passing on left side of overtaken bicycle held properly refused.**

Instruction that the law does not require driver of an automobile overtaking a bicycle to pass on the left "when the person on the bicycle takes the left side and remains there," referring to the sound rule under Acts 1911, p. 642, § 20, as to turning to the left, was properly refused, as the reference to the "left side" is too uncertain as to the roadway's serviceable width to warrant its plain implication, and the bicycle may have been on the "left side" of the medial line of travel, and still left sufficient space for "free passage" on that side with due care.

**6. Highways** ⊚⟹184(4)—**An instruction as to the duty of a bicycle rider to turn to the right to allow an automobile to pass on his left held properly refused.**

An instruction, based on Acts 1911, p. 642, § 20, requiring overtaken vehicles to turn to the right as soon as practicable so as to allow free passage on the left, charging that it was the legal duty of a bicycle rider, after he became aware of the approach of an automobile behind him, and if there were no obstructions on the road, to turn to the right so as to allow the automobile to pass on his left, was properly refused, as faulty in its broad and unqualified statement of his duty, since how promptly the turn could have been made might have depended on physical conditions, other than obstructions, as well as on considerations referable to reasonable prudence, such as his speed when advised of the car's approach justifying a longer time in making a "practicable" turn to the right.

**7. Highways** ⊚⟹184(4)—**Instruction as to bicycle rider's negligence as a matter of law in refusing to take to the right when warned of an automobile behind held properly refused.**

An instruction, based on Code 1907, § 7745, making it a misdemeanor to fail to keep to the right ,when overtaken, charging that it would be negligence as a matter of law for a bicycle rider to willfully refuse to take to the right when being warned of the approach of an automobile behind, was properly refused, because it omits the element interposed by the statute requiring that the failure to comply therewith shall be "without good cause," and also predicates the duty on an observance of, or action on, the "warning" of approach from the rear, when the "warning" was "being" given, whereas one seasonably warned must be accorded reasonable opportunity to heed the warning, exercise due care, and consult reasonable prudence before he can be said to be negligent.

**8. Negligence** ⊚⟹100—**Instructions on contributory negligence held properly refused in suit based on wanton acts.**

In an action for death based on wanton and wrongful acts, instructions, advising the jury in substance that, if the sole proximate cause was decedent's own negligence, plaintiff could not recover, were properly refused.

**9. Highways** ⊚⟹184(4)—**Instruction as to what the driver of an automobile may assume as to the action of a competent bicycle rider held correct.**

Instruction that the driver of an automobile is entitled to assume that an apparently competent person, riding a bicycle along the road and in a place of safety, will continue to remain therein after being warned of the approach of an automobile, and that such driver, if in exercise of due care, is under no duty to stop or slacken his speed until it becomes reasonably apparent that the bicycle rider is not going to remain in the place of safety, expresses a sound proposition of law, which defendants, sued for running over a bicycle rider, were entitled to have stated to the jury.

**10. Highways** ⊚⟹184(3)—**Liability of defendant, sued with codefendant for running over bicycle rider, held for jury though codefendant was at the wheel when injury occurred.**

The liability of an individual defendant for running over bicycle rider with an automobile was properly submitted to the jury, though it was undisputed that his codefendant was at the wheel when the injury occurred, where in testifying he freely used the term "we" in describing the driving, management, and control of the car on the occasion of the trip in question.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Marion O. Stone against the Crescent Motor Co., S. B. Williamson and G. A. Daniel. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Count 1 of the complaint reads as follows:

"Plaintiff claims of defendants $30,000.00 as damages for that heretofore, to wit, on the 27th day of August, 1920, Aaron Bernice Stone, who was at said time the minor son of plaintiff and a member of plaintiff's family, was on a bicycle upon a public highway in the county of Jefferson, state of Alabama, to wit, in the town or city of Fairfield, and on said date, a car operated by defendants ran upon or against said minor son or said bicycle, while said bicycle and plaintiff's said minor son were upon said public highway; and, while plaintiff's said minor son was riding said bicycle upon said public highway, and as a proximate consequence thereof, plaintiff's said minor son was knocked, thrown, or caused to fall, and was run upon or against or over by said automobile, and was so injured that he died.

"Plaintiff avers that defendants negligently caused or allowed said automobile to run upon, or against or over plaintiff's said minor son on the occasion aforesaid, and as a proximate consequence of said negligence the death of said minor son was proximately caused as aforesaid by said negligence."

Count 2 concludes as follows:

"Plaintiff further avers that defendants wantonly and wrongfully caused the death of plaintiff's said minor son by wantonly and wrongfully causing or allowing said automobile to run upon or against or over said minor child on the occasion aforesaid, well knowing that so to do would likely or probably cause great personal injury to or death of a human being."

Count 3 concludes as follows:

"Plaintiff further avers that the servant or agent of defendants who had charge or control of said automobile on the occasion aforesaid, acting within the line and scope of his authority as such servant or agent in charge or control of said automobile on the occasion aforesaid, wantonly and wrongfully caused the death of said minor son of plaintiff by wantonly and wrongfully causing or allowing said automobile to run upon or against or over said minor son on the occasion aforesaid, well knowing that so to do would likely or probably cause great personal injury to or death of a human being."

Charges E, A1, and A2, requested by defendants and refused by the trial court, read as follows:

"E. If the sole proximate cause of the death of plaintiff's minor son was the way and manner in which he handled his bicycle, plaintiff cannot recover."

"A1. If the jury are reasonably satisfied from the evidence in this case that plaintiff's minor son was in any manner negligent in the manner in which he handled his bicycle on the occasion of his injury, and that such negligence was the sole proximate cause of his injury, the verdict must be for the defendants."

"A2. The driver of an automobile is entitled to assume that an apparently competent person, riding a bicycle along the road and in a place of safety, will continue, after being warned of the approach of the automobile, to remain in a place of safety, and such driver, if in the exercise of due care in the driving of such automobile, is under no duty to stop or slacken his speed until it becomes reasonably apparent that such person riding on the bicycle is not going to remain in a place of safety."

Burgin & Jenkins, of Birmingham, for appellants.

Where a corporation is joined with individual defendants, the complaint should show, as against appropriate demurrers, the connection between the defendants, and how the liabilities of the corporate defendant arise. 198 Ala. 90, 73 South. 436. An action in case against the master cannot be joined in the same count with an action in trespass against the servant. 206 Ala. 138, 89 South. 289, 17 A. L. R. 617; 198 Ala. 90, 73 South. 436; 197 Ala. 512, 73 South. 103; 196 Ala. 659, 72 South. 261. Whether or not Daniel, one of the defendants, and Almon, a witness, held a private conversation on the day of the coroner's inquest was immaterial, and it was error for the court to allow the witness to be examined on this fact for the purpose of impeachment.. It was also error for the court to allow plaintiff's counsel in argument to comment upon said matter over the objection of defendant. 197 Ala. 603, 73 South. 40; 196 Ala. 61, 71 South. 701; 156 Ala. 589, 47 South. 65; 80 Ala. 208. The law of the road makes it the legal duty of a person riding a bicycle to bear to the right when warned of the approach of an automobile from the rear, and to seasonably turn to the right in order to allow the free passage of such automobile. Acts 1911, p. 642; Code 1907, § 7745; 196 Ala. 670, 72 South. 305. Charges E and A1 should have been given at defendant's request. 183 Ala. 383, 62 South. 816; 198 Ala. 449, 73 South. 642. A person riding in an automobile, who has no control over the driver is not responsible for the negligence or wrongful conduct of the driver. 195 Ala. 378, 70 South. 729; 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87; 182 Ala. 582, 62 South. 28; 189 Ala. 600, 66 South. 585. Charge A2 should have been given at defendant's request. 200 Ala. 282, 76 South. 48; 203 Ala. 86, 82 South. 100. .

Harsh, Harsh & Harsh, of Birmingham, for appellee.

Trespass and case may be joined in the same complaint, provided there is no mixture of trespass and case in any one count. 198 Ala. 90, 73 South. 436; 202 Ala. 246, 80 South. 84; 139 Ala. 161, 34 South. 389; 162 Ala. 570, 50 South. 293; 196 Ala. 659, 72 South. 261. When a count states facts from which a duty to act springs on the part of

each of the defendants, whether there be one or more, it is sufficient to charge the negligent, wanton or wrongful act or omission, without stating the quo modo. 202 Ala. 246, 80 South. 84; 198 Ala. 90, 73 South. 436; 139 Ala. 161; 34 South. 389; 162 Ala. 570, 50 South. 293; 196 Ala. 659, 72 South. 261; 199 Ala. 28, 73 South. 976; 123 Ala. 244, 26 South. 349; 204 Ala. 81, 85 South. 569; 198 Ala. 590, 73 South. 933; 197 Ala. 370, 72 South. 641; 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32; 187 Ala. 541, 65 South. 835; 125 Ala. 237, 28 South. 438, 50 L. R. A. 620. Counsel may argue any fact in evidence, or any reasonable inference which may be drawn from any such fact. 68 Ala. 484; 193 Ala. 22, 69 South. 122; 74 Ala. 374; 200 Ala. 258, 76 South. 24. Charge A2 was bad. 200 Ala. 283, 76 South. 48; Huddy on Auto. 637; 196 Ala. 675, 72 South. 305; 176 Ky. 833, 197 S. W. 557, 6 A. L. R. 775; 98 Tenn. 577, 40 S. W. 1090; 13 R. C. L. 277; 205 Ala. 60, 87 South. 813, 14 A. L. R. 1173. Evidence to show bias of a witness is admissible. 13 Ala. App. 115, 69 South. 371; 199 Ala. 255, 74 South. 366; 183 Ala. 237, 62 South. 889; 161 Ala. 126, 49 South. 461; 128 Ala. 283, 29 South. 771; 202 Ala. 381, 80 South. 463; 157 Ala. 400, 48 South. 58; 62 Ala. 238; 7 Ala. App. 443, 61 South. 476; 187 Ala. 599, 65 South. 946; 31 Ala. 317; 58 Ala. 319; 17 Ala. App. 301, 84 South. 777. ·

McCLELLAN, J. The plaintiff's (appellee's) minor son, while riding a bicycle on a highway, was run upon by an automobile and killed. The corporation (appellant), S. B. Williamson, and G. A. Daniel are made defendants.

[1. 2] Count 2 was not subject to the criticism that it undertakes to join, improperly in a single count, trespass and case, within the rule stated in Francis' Case, 109 Ala. 224, 242, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930; National Baking Co. v. Wilson, 198 Ala. 90, 73 South. 436; Central of Georgia R. Co. v. Carlock, 196 Ala. 659, 72 South. 261; Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 South. 289, 17 A. L. R. 617. The count is in case, not trespass, against all three of the defendants, as for a joint tort by the three defendants, one of which was a corporation. As respected the corporate defendant's participation in the wrong, evidence of corporate authorization or ratification of the participation averred was essential to support the count. National Baking Co. v. Wilson, supra. Under this count (2), the plaintiff could not avail of the doctrine of respondeat superior to fix liability upon the corporate defendant as for the act or omission of the defendants Williamson and Daniel, or either of them; no relation of these defendants to the corporate codefendant being alleged. ·National Baking Co. v. Wilson, supra.

[3] Count 3 was not offensive to the rule against the misjoinder of trespass and case in a single count. This count is in case. The "servant or agent of the defendants" (plural), to whom the count ascribes the tortious act, is therein alleged to be a joint servant or agent of the three defendants; and to sustain this averment the proof must have tended, at least, to show that the "servant or agent" causing the injury was a joint agent or servant of the three defendants. If the establishment of liability against one or two of the defendants was sought through the application of the doctrine of respondeat superior, the count should have referred the relationship to the appropriate master or employer. Central of Georgia v. Carlock, supra. Counts 2 and 3 were not subject to the demurrers interposed.

[4] G. D. Almon was introduced as a witness for defendants. He was near the scene of the collision when it occurred. His testimony was favorable to the theory of nonliability advanced by defendants. On his cross-examination he testified that he saw defendants Williamson and Daniel "the day the coroner's investigation was held," that they were the men in the car causing the death of plaintiff's son, and that he next saw them on the day of the coroner's investigation. Plaintiff's counsel thereupon propounded this question:

"Is it not a fact that on the day the coroner's inquest was held on the fourth floor of this courthouse, and while you and the defendants, Mr. Daniel and Mr. Williamson, were out in the hallway in front of the coroner's office, that you and Mr. Daniel went off to one side and held a private conversation?"

The objections interposed, which the court overruled, were these:

"The defendants, separately and severally, objected to the foregoing question on the ground that the same called for immaterial, irrelevant, illegal and incompetent testimony; that the question sought to elicit matters having no bearing on the issues involved in the case; that the apparent purpose of the question was to prejudice the rights of the defendants before the jury in regard to an immaterial matter; that it called for matters inter alios acta, and was an attempt to lay a predicate to impeach the witness on an immaterial matter."

In answer to the question the witness said:

"We did not. Mr. Daniel and I had no conversation on that occasion which was not in the presence of the other parties sitting around in the hallway."

Like exception was reserved to a similar question and ruling during the cross-examination of the defendant Daniel. In rebuttal, plaintiff was permitted, over seasonable objection, to adduce testimony supporting the subject-matter of the quoted question to the witness Almon. The transcript recites that

during the argument of the case to the jury by counsel for plaintiff this occurred:

" 'Now, gentlemen of the jury, we find that on the day the coroner held his inquest as to the death of this young man, and while Mr. Daniel, one of the defendants here, and this witness, Mr. Almon, were in the hallway of this courthouse they went off together to one side, where no one else could hear, and held a private conversation, and the most charitable view you can give to this fact is that this witness Almon is an employee of the defendants.' Thereupon the defendants' attorneys objected to said above-quoted statement of plaintiff's counsel, and moved the court to exclude the same from the jury, and instruct the jury that the same was improper argument, on the grounds that it related to matters which was immaterial to the case and was not a proper subject of argument, and was intended to prejudice the rights of the defendants before the jury."

The court erred in overruling the objection to the question (quoted above) to the witness Almon. If, as appears from the brief for appellee, the question intended to elicit testimony directed to showing Almon's bias in favor of defendants, or any of them, the mere fact, if so, that the witness had a private conversation with one or more of the defendants, on the occasion of the inquest, did not, in any degree, tend to indicate bias of the witness towards the defendants or any of them. That a private conversation, with a party to a cause who later calls him as a witness, took place has no tendency or effect to show a bias that might be considered in determining the credibility of the witness' testimony. Obviously, such a conversation would not tend, even, to indicate or show any relationship, contractual or otherwise, between a party to the cause and the witness. Hence the matter sought by the quoted question to the witness Almon was entirely immaterial. The same considerations conclude to error in respect of the like inquiry of the defendant Daniel, on his cross-examination. The matter sought being wholly immaterial, it was also error to permit it to become the basis for other testimony designed to impeach Almon or Daniel in respect thereto.

[5-7] The court refused these special requests for instruction:

"D. The court charges the jury that the law of this state does not require the driver of an automobile when overtaking a bicycle to pass such bicycle on the left when the person on the bicycle takes the left side and remains there."

"B. The court charges the jury that it was the legal duty of plaintiff's minor son, if he became aware of the approach of the automobile behind him, and if there were no obstructions upon the road, to turn to the right so as to allow the automobile to pass on his left.

"C. The court charges the jury that it would be negligence as a matter of law for the person riding a bicycle to willfully refuse to take to the right when being warned of the approach of an automobile behind him."

Under the evidence to which these requests are to be referred, the defendants' theory was that the plaintiff's son was moving on the left of the medial line of the road, obstructing passage on the bicycle's left, just before the plaintiff's son was overtaken by the automobile; that the car was directed to passing him on the son's right; and that, though he knew of the approach of the car, the son turned his bicycle to the right, to cross or crossing the road at such an angle as that the automobile struck the son on the bicycle. Acts 1911, p. 642, § 20, provides:

"Whenever a person operating a motor vehicle shall meet on a public highway any other person riding or driving a horse or horses or other draft animals or any other vehicle, the person so operating such motor vehicles shall seasonably turn the same to the right of the center of such highway so as to pass without interference. Any person so operating a motor vehicle shall, on overtaking any such horse, draft animal or other vehicle pass on the left side thereof and the rider or driver of such horse, draft animal or other vehicle shall, as soon as practicable, turn to the right so as to allow free passage on the left."

Section 7745 of the Code of 1907 reads:

"Any driver of any carriage or other vehicle, whether of burden or pleasure, using any public road, who, willfully and without good cause, fails to keep to the right hand when met or overtaken by another carriage or other vehicle, so as to permit the carriage or vehicle so meeting or overtaking to pass freely and uninterruptedly, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not more than one hundred dollars."

These features of the statute law relating to the use of public highways were read to the jury by the court in his oral charge. Whatever else may be critically asserted of these requests (D, B, and C), their refusal cannot be justified upon the notion that they were abstract, or that they assumed to predicate a statement or conclusion of law upon theories of defense projected by or resulting from phases of the evidence. A party may conform an instruction to his theory of liability or defense, as presented by phases of the evidence proposing such theory, provided in so doing he does not offend the rule against invading the jury's province. The fault of these requested instructions must be found, if present, in their offense to other rules for determining their propriety or correctness as instructions to the jury.

In Morrison v. Clark, 196 Ala. 670, 677, 72 South. 305, 308, it was held that statutes and ordinances relating to the use of highways by drivers "overtaking and passing other vehicles * * * are inapplicable to vehicles meeting and passing on the highway," citing Zellmer v. McTaigue, 170 Iowa, 534, 153 N. W. 77. The injury complained of in Morri-

son v. Clark, supra, was occasioned, the plaintiff (appellee) claimed, by an impact of an automobile that overtook and was endeavoring to pass the plaintiff as he moved in the same direction. The observation quoted in brief-for appellee from the eighth paragraph of the opinion in Morrison v. Clark was a reference to that different category of injuries caused by collisions between vehicles, etc., moving in opposite directions on the highway. The provisions of the act of 1911 above quoted, defining the side (left) on which the rear vehicle shall pass the one moving in front, are based upon the assumption that the driver of the vehicle moving in front will seasonably observe the regulation to bear to the right "as soon as practicable, * * * to permit free passage," after he becomes aware of the approach of the vehicle from the rear. Where, after becoming aware of the approach of a vehicle from the rear, a driver persists, without occasion or excuse, in so directing the course of his vehicle as to leave insufficient roadway space, on his left, to permit "free passage" to the overtaking vehicle, operated or driven with due care, the laws of this state do not require the rear vehicle to pass on the left of the front vehicle. Huddy on Automobiles (6th Ed.) §§ 380, 382, 383. The act of 1911 (noted above) does not apply to the circumstances indicated, exacting always passage on the front vehicle's left. While the statutes prescribe general rules, they "do not undertake to define what may be the duties and liabilities of travelers under all possible circumstances." O'Maley v. Dorn, 7 Wis. 236, 73 Am. Dec. 403. The abstract theory of request D was referable to a sound rule; but its expression in the requested instruction was faulty, justifying the court's refusal of it. The reference in the request to the "left side," remaining there, was too uncertain with respect to the roadway's serviceable width to warrant the plain implication of the requested instruction. The bicycle may have been on the "left side" of the medial line of the traveled roadway, and still sufficient space may have remained to permit "free passage" of the car on the bicycle rider's left, driven with due care. The circuit court cannot be said to have erred in refusing charge D.

The conception underlying request B was well founded; but it, too, was faulty in its broad, unqualified statement of the duty involved. The duty, under the circumstances first stated in request B, was to turn to the right "as soon as practicable." Acts 1911, p. 642, § 20, supra); and how promptly such a turn could have been there made might have depended upon physical conditions, other than "obstructions" in or upon the roadway, as well as upon considerations referable to reasonable prudence; for instance, the speed at which the bicycle was moving when ad-

vised of the approach of the car might have required or justified a longer time in making a "practicable" turn to the right. The policy of the laws of this state is that in overtaking and passing slower vehicles the rear, faster vehicle shall pass on the forward vehicle's left; and it is only in exceptional circumstances that a passing on its right, with due care and prudence, is to be justified when injury, proximately caused by undertaking to pass the overtaken vehicle on the right, ensues. The court cannot be held to have erred in refusing request B.

Refused request C was doubtless suggested by the provisions of Code, § 7745, quoted ante. In Watts v. Montgomery Traction Co., 175 Ala. 102, 105, 57 South. 471, it was held that the violation of an ordinance or statute is negligence per se, and that for injury proximately caused by such violation recovery may be had, if otherwise due. Measured by the provision of the statute (section 7745), request C was, among other possible infirmities faulty in its omission of the element interposed by the statute's phrase, "and without good cause" fails to comply with that statute's exaction. The request (C) is also faulty in predicating the duty referred to therein upon an observance of or action upon the "warning" of approach from the rear, at the time the "warning" was "being" given. One seasonably warned of the approaching vehicle from the rear must be accorded a reasonable opportunity to heed the warning, to exercise due care, and to consult reasonable prudence before he can be said to be negligent in the premises. This request was refused without error.

[8] Through requests E and A1 (there are two lettered A) the defendants sought to have the jury advised, in substance, that if the sole proximate cause of the death of plaintiff's son was his own negligence in handling the bicycle he was riding, the plaintiff could not recover. The considerations adverted to in Renfroe v. Collins, 201 Ala. 489, 78 South. 395, discriminating Karpeles v. City Ice Delivery Co., 198 Ala. 449, 73 South. 642, in response on rehearing—and later illustrated in Montevallo Mining Co. v. Underwood, 202 Ala. 59, 61, 79 South. 453, justified the court's action in refusing the special requests for instruction. Charge H, given for defendants, was appropriate to the issues and evidence, and in elements affording its theory of law accorded the defendants the benefit of all that was due them in the way of concluding against a recovery on account of the action or conduct, on this occasion, of plaintiff's son: provided, it had characterized the negligence described as a proximate contributing cause of the injury.

[9] Defendants' request A2 was erroneously refused. It expressed a sound proposition of law which the defendants were entitled to have stated to the jury. Sington v. B. R., L.

& P. Co., 200 Ala. 282, 76 South. 48; Johnson v. L. & N. R. Co., 203 Ala. 86, 82 South. 100. The principle has been approved in railway cases, and is applicable to any case where its doctrine is invoked by the circumstances involved.

[10] It cannot be affirmed on this record that the defendant Daniel was due general instruction in his favor. Notwithstanding the testimony shows, without dispute, that Williamson was at the wheel when the injury occurred, the rather free use of "we," in the testimony of Daniel, descriptive of the driving, management, or control of the car on the occasion of the trip from Birmingham, afforded matter rendering proper a submission of the issue to the jury's determination.

For the errors indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

On Rehearing.

McCLELLAN, J. It is insisted that the criticism of assignment numbered 3 in Sington v. B. R., L. & P. Co., 200 Ala. 282, 285 (7), 76 South. 48, is applicable to request A2, refused to these appellants. This view takes no account of the presence in the former case of the words "to him," and the absence of those words from the requested instruction A2.

The application for rehearing is overruled.