# Wright v. Clausen.

(Decided March 23, 1934.)

HUBBARD BROTHERS for appellant.

HOGAN & BERRY and LEE ROY CURTIS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—. Reversing.

Leora Wright, on November 17, 1931, sued Conrad J. Clausen for $10,000 for injuries alleged to have been done her by the negligence of the defendant, the jury found for him, and she has appealed, and her grounds for reversal will be stated when we reach them in the course of this opinion.

## Undisputed Facts.

The automobile collision, in which Mrs. Wright sustained her injuries, occurred about 6:30 p. m. Thursday,

August 6, 1931, on the Poplar Level road. Plaintiff's husband, Ernest Wright, was going to drive out to see a Mr. Crane, and, upon his invitation, his wife and children went with him. He was driving a Ford sedan, Mrs. Wright was seated on the right-hand side of the front seat, and their three children were in the rear seat. Clausen, driving a ½ ton truck, had left his place of business with an order of merchandise to be delivered at Camp Taylor. Both were traveling south on the Poplar Level road which runs practically north and south. The Wrights had started first, but Clausen, who was driving faster than they were, gradually overtook them and followed behind them for some distance without having tried to pass them. Crane's driveway forms a "T-shaped" intersection with the Poplar Level road, entering it from the west or to these parties from the right.

Wright, in the sedan, when he got in about 40 or 50 feet of Crane's driveway, drew to the left somewhat, then turned to the right to enter the driveway, whereupon Clausen, who, without sounding his horn, had stepped on the gas and undertaken to pass with his truck to the right of the sedan, struck head-on with his truck the right side of the sedan, with resulting injuries to it and to Mrs. Wright.

Clausen was about 15 feet to the rear of the sedan when it turned across the road for Crane's driveway. Clausen testifies his brakes were good, and that when running 15 miles per hour he could stop in 15 or 20 feet. After striking the sedan and knocking it practically end for end in the road, the truck came to a stop about 40 or 50 feet to the south of, or beyond, Crane's driveway.

The improved part of Poplar Level road is 20 or 21 feet wide, with a 5-foot shoulder on either side, and the Wright sedan, after the collision, was to the west or right of, but almost at the center line of, the Poplar Level road, the back end being nearer to the right or west side of the road than the front end. No other automobiles were near, and the road was otherwise unobstructed when the collision occurred.

### Disputed Facts.

Mrs. Wright testifies this sedan belonged to her husband, but admitted the bill of sale and the license were in her name. She testifies that, when about 35 or 40 feet north of Crane's driveway, her husband gave a

signal, "with his hand just like that outside the window." (That may have meant something to the jury which saw it, but is meaningless to us.) It was by section 2739g-50, Ky. Stats., made his duty to have given this signal, by extending the hand and arm horizontally from and beyond the side of the vehicle toward which the turn is to be made, or by extending the hand and arm upwardly at an angle of forty-five degrees or greater from the horizontal from the side opposite the direction towards which the turn is to be made. Mrs. Wright's daughter testified her father gave a signal by extending his left hand upward.

Clausen admits he gave no signal, and says, regarding Wright's signals: "I could not have seen it if he did give it. It would not have done any good because he was too far over." He was asked by his counsel, "Did they give you any signal that they intended to turn back again to the right?" He answered, "No, sir; none whatever." The testimony for Mrs. Wright was that signal was given by Mr. Wright when they were 35 or 40 feet north of the Crane driveway. Clausen was never asked about that signal given at that point.

## The Instructions.

No serious complaint is made of instruction No. 1, and the court will give it again if the issue is substantially the same, inserting therein as one of the duties of the defendant these or similar words:

"And to watch for and observe the signals given from vehicles in front of him."

Likewise No. 2 will be given again, but the court will insert in it the way Mr. Wright should indicate his intention of turning to the right as we have stated above. Instructions 4, 5, 6, and 7 are approved.

Instruction 3 was in these words:

"Regardless of the ownership of the car, if the jury believe from the evidence that Ernest Wright [driver of the car in which plaintiff was riding] at the time and place referred to in the evidence, turned his car to the left of the center of the highway and proceeded thereon, leaving the right side of said highway clear for the operation of the defendant's vehicle; and thereafter turned to cross the path of defendant's vehicle; and if they further believe that the said Ernest Wright came so sud-

denly into the path of the defendant's vehicle and so close thereto that, after the defendant discovered plaintiff's peril, or in the exercise of ordinary care should have discovered it, the said defendant, by the exercise of ordinary care, could not have stopped his car or slackened its speed or changed its course in time to have avoided the collision if he had been driving at a reasonable rate of speed and had had his car under reasonable control [as set forth in the first instruction] then the law is for the defendant, Conrad J. Clausen and the jury will so find even though they may believe from the evidence that the defendant was operating his car at an unreasonable rate of speed, if he was so doing.''

That instruction was erroneous in many particulars. By section 2739g-40, Ky. Stats., it is provided that ''vehicles overtaking other vehicles proceeding in the same direction shall pass to the left thereof and shall not again drive to the right until reasonably clear of such vehicles, and the person operating or in charge of the overtaking vehicle shall sound horn or other sound device before passing such vehicle.'' And by section 2739g-41, Ky. Stats., it is provided:

''It shall be the duty of the operator of a vehicle about to be overtaken and passed to give way to the right in favor of the overtaking vehicle upon suitable and audible signal being given by the overtaking vehicle if such overtaking vehicle be an automobile or bicycle.''

And by section 2739g-43, Ky. Stats., it is provided:

''In all cases of meeting, passing or overtaking of vehicles such assistance shall be given by the operator and occupants of each vehicle, respectively, to the other as the circumstances shall reasonably demand, in order to obtain clearance and avoid accidents.''

That is the rule of the road and surely a person who disregards the rule of the road, and the statute, and, upon overtaking a vehicle, attempts to pass it on the right, must exercise still greater care; yet this instruction would permit a jury to find, and this jury did find, for a man passing on the right without sounding a horn or other device.

If Wright had observed there was apparently sufficient space for him to turn his sedan to the right and

into this driveway in safety, and had given to Clausen signals of his intention to turn as we have indicated, then he had a right to turn, and Clausen had no right to spurt up and undertake to pass him on the right while he was so turning, yet, under this instruction, a jury could find, and this jury did find, a man blameless who did that very thing. When, by section 2739g-50, Ky. Stats., there was imposed upon the operator of a motor vehicle certain duties relative to turning, stopping, or changing the course of such vehicle, and giving signals therefor, then there fell upon the operators of trailing and on-coming vehicles the duty to watch for and observe signals of intention to turn, stop, or change of course (42 C. J. p. 949, sec. 671, note 69; Bawden v. Kuklinski, 48 Nev. 181, 228 P. 588, 232 P. 782), and the operators of trailing or on-coming vehicles must observe and give regard to signals, so given, and must use ordinary care to keep their trailing or on-coming vehicles under such control as to avoid coming into collision with the vehicle from which the signals were given, while it is turning, stopping, or changing its course as indicated, yet under this instruction a jury might hold a man blameless who did not watch for signals, etc.

If the defendant Clausen, by failure to do his duty as defined in instruction No. 1, put the occupants of the Wright sedan in peril, then he cannot be excused because he was unable to avoid injuring them after they were so imperiled. Defendant's conduct in the emergency, even though proven to have been ideal and heroic, would not excuse liability for injuries to Mrs. Wright, if the defendant's antecedent wrongful acts had brought about the emergency. 45 C. J. p. 714, sec. 96.

"A person may not himself be guilty of negligence and thereby create an emergency, and then be permitted to say that after the emergency arose he did all he reasonably could with the means at his command to avoid the injury and thus escape the consequences of his own negligence." Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 459, 35 S. W. (2d) 902, 905.

Under this instruction the jury may have believed Clausen's negligence was both the primary and proximate cause, or even the sole cause of this collision, and yet may have found for him because the jury believed he did all he could to prevent it after he discovered the peril of the Wrights. This instruction, if given again,

must be entirely recast. In view of Clausen's evidence that with the brakes he had he could stop his truck within 15 or 20 feet when he was going 15 miles per hour, and the fact that on this occasion, in spite of the check that resulted to his truck's momentum when it struck the sedan with such force as to turn it practically end for end, the truck ran about 75 feet before coming to a stop, it is reasonably apparent he was going much faster than 15 miles per hour, and there was some proof this collision occurred on a steep grade; hence the court should have given an instruction under subsection 2 of section 2739g-51, as amended by Acts 1930, c. 79, after Mrs. Wright had asked for such an instruction and offered one, and upon the next trial, if the evidence is the same, and she should do so again, the court will give such an instruction patterning it after the instruction in Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478.

We are not holding a motor vehicle may never pass upon the right of a vehicle it has overtaken, but one attempting to do so would certainly be required to exercise greater care than when passing on the left, as provided by section 2739g-40, Ky. Stats., for the driver of the trailing or overtaking car must realize, as said in Government Street Lumber Co. v. Ollinger, 18 Ala. App. 518, 94 So. 177, 180:

> "The man ahead is engaged in handling a high-power, dangerous machine, requiring constant attention and quick action, and that his lookout is ahead, and not behind."

The driver of the overtaking car must blow his horn and give the vehicle in front a reasonable time to obey section 2739g-41 and to move over to the right. If he does not move over he has committed a misdemeanor for which he may be punished by a fine of not less than $10 or more than $100. See section 2739g-65, Ky. Stats. If the car in front after signal and after a reasonable time still refuses to move over, the car behind may then pass to the right of it, exercising that greater care and assuming that greater risk, commensurate with and inseparable from the unusual use it is making of the road in so passing.

Other and further elaboration of the duty of the vehicle ahead may be found in 42 C. J. p. 948, sec. 670, and 13 R. C. L. p. 277, sec. 228, and of the duty of the

504

one behind in 42 C. J. p. 949, sec. 671, and 13 R. C. L. p. 275, sec. 227, and Crescent Motor Co. v. Stone, 208 Ala. 137, 94 So. 78.

Plaintiff is awarded a new trial to be had in conformity to this opinion.

Judgment reversed.