## Cook v. Gillespie.
(Decided March 22, 1935.)

ROGERS & ROGERS for appellant.

NORTHCUTT & NORTHCUTT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

A suit begun by Miranda Gillespie against Leonard Cook and Allie Baldwin to recover $5,260 for injuries received by her in an automobile collision resulted in the following judgment entered upon a verdict signed by ten jurors:

"It is adjudged that the plaintiff, Miranda Gillespie, recover of the defendants, Leonard Cook and Allie Baldwin, jointly, the sum of five hundred ($500.00) dollars—from Leonard Cook the sum of three hundred ($300.00) dollars and from Allie Baldwin the sum of two hundred ($200.00) dollars, and her costs herein expended."

Cook's motion for a new trial having been overruled, he appeals.

This accident occurred about 5:30 p. m., August 20, 1932, on the Dixie highway about one-half mile north of the village of Richwood and at the entrance of the Frogtown road, which there enters the Dixie highway from the west and forms a T-shaped intersection with it.

Cook in his truck had been traveling north on the Dixie highway and was turning to the left into this Frogtown road when the collision occurred. Baldwin was also traveling north on the Dixie highway, but on the left or west side thereof, and was endeavoring to pass Cook's truck when the left front wheel of the truck was brushed by one of the right fenders of Baldwin's coupe which caused the coupe to leave the road,

to run over some logs into a Coca-Cola sign, into a fence, and finally when about eighty feet from this intersection to strike against and break off a fifteen-inch telephone pole by which the coupe was wrecked.

Mrs. Gillespie was a guest in the Baldwin coupe, and in the wreck was seriously injured.

### Duties of these Men.

Where a statute imposes upon the operator of a motor vehicle duties relative to turning, stopping, or changing the course of such vehicle and giving signals therefor, there falls upon the operators of trailing and oncoming vehicles the duty to watch for and observe such signals, to give due regard to them, and to keep their trailing or oncoming vehicles under such control as to avoid colliding with the vehicle, from which the signals were given, while it is turning, stopping, or changing its course as indicated. Wright v. Clausen, 253 Ky. 498, 69 S. W. (2d) 1062; 42 C. J. p. 949, sec. 671, note 69.

The operator of the trailing vehicle must remember the man ahead is engaged in handling a high-power, dangerous machine, requiring constant attention and quick action, and that his outlook is ahead and not behind. Wright v. Clausen, 253 Ky. 498, 69 S. W. (2d) 1062; Government Street Lumber Co. v. Ollinger, 18 Ala. App. 518, 94 So. 177.

### Was Cook Negligent?

Cook was driving a half-ton Ford truck. No one says he was traveling over 15 or 20 miles per hour, and it is not disputed that he was traveling still slower as he made this turn. His truck was equipped with a rear-view mirror. Seven witnesses say he gave a signal of his intention to turn by holding his left hand straight out. No one testifies that he turned and looked back. Of course he could have got a view of the traffic behind him by looking in his mirror, but no one says whether he did or not. Mrs. Gillespie cannot rely on Cook's failure to look unless she has some evidence he failed to look. She has none.

Mrs. Gillespie must look for Cook's negligence in some violation of the statutes, for back in the days of horse-drawn vehicles the rights of the man on his right side of the road were superior to the rights of the man

on his left side of the road, and the rights of the man in front were superior to those of the man behind, the overtaking vehicle had to use proper caution in passing and watch for oncoming vehicles (29 C. J. p. 654, sec. 419), and the man in front could turn across the road, and he need not under all circumstances look behind him or sideways before crossing the street, or necessarily anticipate that a team is behind, or give a signal. See 29 C. J. p. 655, sec. 420. In 1836 in Payne v. Smith, 4 Dana (34 Ky.) 497, Smith's gig struck and killed a horse that sauntered across the street in front of him, and this court held he was liable to Payne for the value of his horse. "Except in matters of detail [our statutes regarding motor vehicles] are largely declaratory of what the law was before they were written, and the duties of automobile drivers are not limited to those mentioned in the statute." Hardware Mutual Cas. Co. v. Union T. & S. Co., 205 Ky. 651, 266 S. W. 362, 364; Cumberland T. & T. Co. v. Yeiser, 141 Ky. 15, 131 S. W. 1049, 31 L. R. A. (N. S.) 1137. The statutes have to some extent changed that at least as regards motor vehicles, and now if the man in front desires to turn or change his course he must:

(a) See that there is sufficient space for such change or turn to be made in safety.

(b) If it appears that the movement or operation of another or other vehicles may reasonably be affected by such change, he must give plainly visible signals, etc. Section 2739g-50, Ky. Stats. In other words, he must look; then, if he sees any one to whom to give a signal, he must do that. The law does not impose upon him the duty of giving a signal if his contemplated turn or change of course will not affect any one, though the giving of signals on all such occasions would be a good habit to cultivate.

Negligence is never presumed, it must always be proven, and the testimony of Mrs. Gillespie and Mr. Baldwin (both interested witnesses) that Cook did not hold out his hand is contradicted by Cook (another interested witness) and by six other witnesses who are entirely disinterested; thus there is a sharp issue here as to whether Cook was negligent or not.

Elaborate statements of the duties of the operator of the machine ahead may be found in 42 C. J. p. 948,

sec. 670, and 13 R. C. L. p. 277, sec. 288, and of the duties of the operator of the machine behind in 42 C. J. p. 949, sec. 671, and 13 R. C. L. p. 275, sec. 227, and in Crescent Motor Co. v, Stone, 208 Ala. 137, 94 So. 78.

## Was Baldwin Negligent?

Mr. Baldwin testifies that he was immediately behind Cook's truck, was looking at it, and had passed no car since coming through Walton. Mrs. Gillespie, who was riding with him, testifies they passed plenty of cars after coming through Walton. She says they had been following Mr. Cook's truck for three or four squares and there were no cars between them. Both she and Mr. Baldwin testify they were going about 15 miles per hour. Mr. Hopperton, driving an Oldsmobile sedan, testifies he was about 130 feet behind Cook's truck, and he testifies the Baldwin car just zipped by him like an aeroplane going 50 to 55 miles per hour. Mr. Easton says he was 400 to 500 feet behind the Hopperton car, that he was driving fast, perhaps 50 miles per hour, and that the Baldwin car passed him. No one says that the Baldwin car gave any signal of intention to pass Cook. No one says its speed was checked at all, and Mrs. Gillespie says it speeded up a little when it undertook to pass Cook. The havoc that it wrought shows it was going at a furious rate. It was Baldwin's duty before passing Cook to see that he could do so in safety and to give the signals required by section 2739g-40. He did neither.

## The Instructions.

The problem in this case is to find whose negligence was the proximate cause of the collision and Mrs. Gillespie's resulting injuries. That was a question for the jury to answer, and ordinarily its finding should not be molested; but where the court has not given correct instructions, by which failure the jury may have been led astray, the rule is otherwise. This was plainly an intersection case, yet the court instructed the jury as if this were a collision that had occurred on a straight and open road. In other words, the court treated this as a case governed entirely by section 2739g-50, apparently losing sight entirely of section 2739g-37, Ky. Stats. Supp. 1933. The thought that this latter section applies only to automobiles, whose paths are at right angles to each other, is quite common; yet we have thrice held

otherwise. See White Swan Laundry Co. v. Boyd, 212 Ky. 747, 279 S. W. 345; Mendel v. Dorman, 202 Ky. 29, 258 S. W. 963; and Coleman v. Nelson, 224 Ky. 460, 6 S. W. (2d) 454. See Motor Vehicles 42 C. J. secs. 689, 702, 715 and 728. The evidence clearly shows Cook entered this intersection before Baldwin reached there; hence Cook, by virtue of section 2739g-37, had the right of way, which was disregarded by Baldwin in the operation of his automobile and overlooked by the court in instructing the jury. The court, having undertaken to instruct upon the duties of Cook and Baldwin in the operation of their respective automobiles, should have given proper instructions, and Cook, having objected and excepted to them, is entitled to avail himself of the indicated error in them which was prejudicial to him.

Cook complains of instruction No. 6, which peremptorily began thus:

"The jury will find for the plaintiff against either or both of the defendants, and will award her as damages," etc.

If both these men were unquestionably negligent, and Mrs. Gillespie had suffered therefrom without being negligent herself and without the negligence of either being attributable to her, this instruction would be correct; but, as we pointed out above, there was a sharp issue as to the negligence of Cook, and this instruction No. 6 was calculated to induce the jury to believe that it was the court's conclusion Cook's negligence was clearly established. It is in effect a peremptory instruction, and was prejudicially erroneous as to Cook. There is in this evidence enough to cause the court under proper instructions to permit the jury to find against Cook, but not enough to direct it to do so, which is practically what was done.

The judgment obtained by Mrs. Gillespie in so far as it affects Cook is reversed.