## Castle v. Allen et al.
(Decided Sept. 27, 1938.)

W. R. PRATER, HARRY R. BURKE and H. H. RAMEY for appellant.

C. P. STEPHENS, E. L. ALLEN and ALLEN & TACKETT for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On March 27, 1936, the appellant, Morton Castle, shot and killed Guyless Allen, and thereafter Allen's widow and six infant children brought an action against Castle under section 4 of the Kentucky Statutes, which provides:

"The widow and minor child, or either or both of them, of a person killed by the careless, wanton or malicious use of firearms * * * not in self-defense, may have an action against the person who committed the killing. * * *"

The jury returned a verdict for the plaintiffs in the sum of $5,000, and the defendant has appealed. He contends that the evidence is not sufficient to sustain the verdict; that incompetent evidence was admitted; and that the court erred in rejecting certain evidence offered by the defendant.

There was no eyewitness to the shooting. Appellant and the deceased lived in the same neighborhood, and their lands adjoined. A dispute over the boundary line had arisen, and, on the day before the killing appellant dug post holes and set posts on what he deemed to be the line. He discovered later during the day that someone had moved the posts. On the following morning, he went to the place where the line was in dispute. He had an axe and a post digger. The deceased appeared on the scene, and a quarrel ensued. The appellant left, went to his home about 400 yards away, procured a shotgun and returned. A shot was heard shortly after his return. Silas Bayes, a neighbor, saw appellant go toward the latter's home and return a few minutes later with a shotgun, and shortly thereafter heard the shot. He started toward the scene of the shooting, and after walking about 200 yards, met appellant, who informed him he had shot the deceased, and asked Bayes to notify Allen's family. Carl Allen, a son of the deceased and one of the plaintiffs, testified that he was at his father's home and went to the scene of the shooting as soon as he heard the report of the gun. His father had been shot in the leg, and had walked about 100 yards toward the house from the point where he was standing when he was shot. The witness saw the appellant with a shotgun some distance away talking to Silas Bayes. The appellant testified that a dispute as to the location of the line between their lands had arisen between him and the deceased, and, on the morning in

question, the deceased pulled up the posts which appellant had set. He testified as follows concerning what occurred at this point:

"Well, he went on out to where I had some posts set and he went to pulling my posts up and I asked him not to pull the posts up. He grabbed a rock on me, and he run onto me with that rock; and I had taken a post hole digger and an ax down there with me, and when he commenced pulling the posts up I sat my post hole digger down and my ax down on the other side of me, and I asked him not to pull up any more of the posts, and I said to him, 'You know this land belongs to me, and I have had it fenced in for a long time,' I don't know how long it had been fenced in; I fenced it myself. I asked him not to pull the posts up, and he grabbed a rock and when he done that I picked up the ax and he grabbed the rock and run up on me with it, and said he would kill me, and he dropped the rock and grabbed the ax out of my hand and come on to me with the ax, and I run back a piece out in the bottom, and he went ahead to pulling the posts up, and I left and went on up to the house."

The deceased had only one arm, his left arm having been amputated near the elbow. Appellant admitted he procured a shotgun at his home and returned to the place where he had left the deceased. As to what happened after his return, he testified as follows:

"After that I picked up a post and walked out there to set the posts in where they had been pulled out, and he raised up out there back of the bottom, he was over behind some bushes, and he come on to me with the ax again, and I throwed the gun up in his face and told him to stay away and not come any further, and he run right on to me again with the ax and I dropped the gun down and shot him in the leg."

If the appellant shot the deceased in his necessary self-defense, then, of course, he is not liable in an action by the widow and minor children for damages. The evidence on this point is not by any means conclusive, but it was sufficient to take the case to the jury and to sustain its verdict. There were circumstances from which the jury might reasonably infer that the shooting was

not in self-defense. After the first quarrel, the appellant went to his home, procured a gun, returned and shot the deceased. His account of what occurred is not, under all the circumstances, convincing, and it was for the jury to say whether or not his version of the transaction was true. Undoubtedly, in a criminal prosecution, the evidence was sufficient to take the case to the jury on the question of appellant's guilt or innocence, and, certainly, a more stringent rule should not be applied in a civil action. The fact that the testimony of a witness is not contradicted by word of mouth does not compel its acceptance as true. It is the province of the jury to consider all the circumstances and to give to the evidence such weight as in their judgment it is entitled to.

While Carl Allen, one of the plaintiffs, was on the witness stand, he was asked if his father related to him the circumstances of the shooting. The record shows that before this question was asked, the presiding judge directed the jury to leave the jury box. The witness answered in the affirmative, and testified concerning statements made to him by the deceased which indicated that appellant shot the deceased without provocation. Following his answer to the question, this appears: "At this point the jury returned to the jury box." In appellant's brief, it is insisted that the testimony of Carl Allen concerning the statements of his father was incompetent, and that, regardless of the record, it was heard by the jury. In substance, it is argued that the record as certified to this court is not a true transcript of what occurred on the trial. If the official reporter's transcript of the evidence, which is incorporated in the bill of exceptions filed by the appellant and approved by the trial judge, is incorrect, it should have been corrected in the circuit court or a bystander's bill should have been filed. This court, as well as appellant, is bound by the bill of exceptions as it appears in this record. The bill as approved by the trial judge is conclusive. Louisville Trust Company v. Heimbuecher, 252 Ky. 217, 66 S. W. (2d) 96; Mays v. Mays, 245 Ky. 755, 54 S. W. (2d) 333; Butcher v. Corbin Hardware & Furniture Company, 244 Ky. 632, 51 S. W. (2d) 931; Consolidated Coach Corporation v. Garmon, 233 Ky. 464, 26 S. W. (2d) 20.

During the cross-examination of the witness Silas

Bayes, he was asked if appellant made any statement to him when they met a few minutes after the shooting. Bayes answered:

"I says to him, 'Morgan, is he hurt bad,' and he says, 'No, he is not hurt bad;' he says, 'Me and him was into a racket, and he had that rock and I had my gun drawed on him, on his breast and didn't want to kill him and tried to get him to stop, and I shot him across the leg to stop him.'"

The answer was made out of the presence of the jury. The court refused to permit this evidence to be heard by the jury, and it is insisted that this was error. It is argued that appellant's statement to Bayes was competent as a part of the res gestæ. It appears that the conversation between Bayes and appellant occurred from three to five minutes after the shooting and after Bayes had walked a distance of 200 yards. Appellant had picked up his axe and post digger and had walked about 100 yards from the scene of the shooting. The statement of appellant made to Bayes was purely self-serving, and, to be admissible as a part of the res gestæ, must have been "so intimately connected and interwoven with the principal fact by surrounding circumstances as to raise a reasonable presumption that the statements were made or the act done under the immediate influence of the principal transaction and as a spontaneous expression of thought created by or springing out of the transaction itself, and so near in point of time as to exclude the presumption that it was the result of premeditation or design." Consolidated Coach Corporation v. Earls' Adm'r, 263 Ky. 814, 94 S. W. (2d) 6, 8. In Cumberland Gasoline Corporation v. Fields' Adm'r, 258 Ky. 417, 80 S. W. (2d) 28, a boy died from burns, and, in an action for his death, testimony concerning statements made by him a short time after the fire in which he narrated how he was burned was admitted. It was held that his statements were not admissible as a part of the res gestæ. In the course of the opinion, it was said:

"The dividing line between admissibility and nonadmissibility lies between the words outcry and narration; between impulse and reflection. Such statements are rarely admitted where they are made in response to interrogation, as that tends to remove the necessary element of spontaneity."

In the instant case, appellant had had ample time for reflection when he met the witness Bayes. His statement was not a spontaneous utterance while under the influence of the transaction, but was a narration of facts in response to interrogation. The court did not err in rejecting the evidence.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.