**HINTON v. DIXIE OHIO EXP. CO.**
No. 11228.

United States Court of Appeals,
Sixth Circuit.

April 11, 1951.

Arthur Grafton, Louisville, Ky. (Arthur W. Grafton, Ed. P. Jackson, Jr. and Wyatt, Grafton & Grafton, all of Louisville, Ky., on the brief), for appellant.

John L. Davis, Lexington, Ky. (R. W. Keenon, John L. Davis and Stoll, Keenon & Park, all of Lexington, Ky., on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The district court directed a verdict against appellant, Hinton, in an action for damages for personal injuries brought by him against Dixie Ohio Express Company.

When injured, Hinton was driving a large truck with a smaller one mounted on it and a third truck attached by a tow bar and timbers. The vehicle of appellee with which he came into collision on a highway near Nicholasville, Kentucky, was a standard size tractor-trailer unit. Appellant was an experienced truck driver, having been occupied for several years as a delivery driver of automobiles from factory to dealer. His total mileage was over 1,250,-000, about half of which consisted in truck driving.

According to his testimony, he was familiar with road customs of truck drivers generally and in Kentucky. He said that the customary signal when one truck driver in Kentucky desires to pass another was either to turn headlights full on, or to blink them constantly to obtain the attention of the front driver, who would give a clearance signal by two blinks of his clearance lights or show a red light from the rear of his truck.

The collision occurred at 10:30 o'clock in the morning of a clear day on a dry highway. According to Hinton, he had been traveling for sometime behind the Dixie company truck and, wishing to pass, had been checking the road. Eventually, when some two hundred to three hundred yards from the point of collision where he could see approximately a half mile of the road ahead with no traffic approaching, he used his headlights as a passing signal and received from the Dixie truck ahead an answering signal by two light flashes from the rear of the trailer. On cross-examination, appellant admitted that he did not believe he sounded his horn before he started to pass the Dixie truck, which at the time was moving at a speed of about twenty-five miles per hour.

He testified that as he went past appellee's truck, its "speed increased rapidly", at which time the front end of his truck had reached a position almost even with the rear of the cab of the Dixie truck. There were guard rails on each side of the road at the point of collision. Appellant stated that when he was apparently half way or nearly through the portion of the road protected by these guard rails, the truck in front of him swerved slightly to the right "and then came back sharply" to the left across the center line and crowded him completely off the highway, to such extent that his vehicle went through the guard rails into a field four or five feet below the road level. He stated that his vehicle first hit a telephone post, and then a log lying cross-ways in the field which "threw the outfit into the air". Appellant hit the ground and, soon afterward, the driver of the Dixie truck came over to where he was lying.

An eye witness, Reynolds, engaged in running a riding school on a neighboring farm, was put on the stand by appellant. He testified that the portion of the road between the guard rails is considerably narrower than the road at the top of the hill; that people who live in the vicinity watch vehicles passing simultaneously through the guard rails and "make mental bets with ourselves as to whether they will get there or not." So, from a distance of some 125

yards he watched the occurence in controversy.

When both trucks were in between the guard rails, Reynolds saw the Dixie truck swerve toward the center of the road and, though he did not state unequivocally that it actually did cross the center line of the highway, he said "it looked very much like a part of the rig might have been across the center line." He testified further that there was a hump in the road at the approximate point where he saw the Dixie truck swerve. He said that the Dixie driver stopped his rig almost immediately, came over the fence and assisted him in helping the injured man, who was conscious; and that the latter and the Dixie driver talked about the accident. The witness could not recall the conversation, however, and would not attempt to quote it.

Before appellant had closed his proof, his attorney agreed as a matter of accommodation that Schooler, a trooper with the Kentucky State Police and a witness in behalf of appellee, might testify out of turn. The officer swore that upon notification he went to the scene of the accident, arriving there at approximately eleven o'clock A. M. He found appellant's rig over in a field some fifty or sixty feet off the highway and the Dixie truck up the road perhaps two hundred yards "pulled off in a wide spot so that the road could be cleared." He measured the width of the highway. At the top of the hill from which appellant had approached the portion of the road enclosed by guard rails the width was found to be 19 feet, 5 inches, with three-foot shoulders, and at the point of impact between the guard rails the width was 16 feet, 10 inches, with two-foot shoulders. The officer stated that appellee's rig was approximately eight feet wide and appellant's approximately seven feet, or a little over. He testified further that the asphalt road surface of the highway was slick, and sufficiently bumpy to cause a vehicle to swerve "in passing over those bumps". Asked whether there was room on the road for the two vehicles to pass, he responded affirmatively, but said "it was close."

Appellant contends that in presenting, by agreement of counsel, the testimony of Officer Schooler before the plaintiff had rested his case, the defendant (now appellee) waived its right to move for a directed verdict at the close of plaintiff's proof. In view of our conclusions about to be stated, we regard it as unnecessary and immaterial to pass upon the point.

■ (1) The district judge committed reversible error in denying appellant the right to testify as to a statement made to him by appellee's truck driver. Appellant swore that, a few minutes after the accident, while he was lying on the ground, the driver came over to him. The witness was asked: "Did he say anything to you about the accident?" Appellee's attorney objected to the question. Appellant's advocate stated that the conversation was certainly part of the *res gestae*. The court interposed: "I don't know whether it is or not. I don't know how much time had elapsed." The witness was then asked how long was it after he hit the ground before the truck driver came over to him. "It seemed like just a matter of a few minutes", he responded. "It could not have been very long."

"Well, he had gotten out of his truck and walked across the road, is that right?" the judge asked.

"I believe that is right", the witness replied.

The judge questioned: "How far distant?"

"I don't really know how far I was off the road", the witness answered.

Whereupon, the judge, without further comment, said: "I sustain the objection."

The attorney for appellant requested and received permission to make an avowal. He stated that appellant, if permitted, would have testified that the driver of appellee's truck came over to where he lay on the ground and said to him that the Dixie truck "got out of control" when it "hit the bump, which caused him to swerve to the left."

■ The error of the trial judge in excluding the proffered *res gestae* statement seems to stem from misconception of the essential element in the rule of admissibility—the spontaneity of the statement.

He rested his ruling upon the mere lapse of time measured in minutes between the accident and the alleged statement. The *res gestae* rule and the reasons underlying it are clearly stated by the Court of Appeals of Kentucky in Consolidated Coach Corporation v. Earls' Adm'r, 263 Ky. 814, 818, 820, 94 S.W.2d 6, 8: "As a part of the res gestae, declarations or statements made or acts done following the happening of the principal act or event are admissible when so intimately connected and interwoven with the principal fact by surrounding circumstances as to raise a reasonable presumption that the statements were made or the act done under the immediate influence of the principal transaction and as a spontaneous expression of thought created by or springing out of the transaction itself, and so near in point of time as to exclude the presumption that it was the result of premeditation or design.". This quotation was approved in Castle v. Allen, 274 Ky. 658, 662, 120 S.W.2d 219.

The opinion in the Consolidated Coach Corporation case, supra, cites numerous Kentucky authorities, in which statements measured in varying numbers of minutes after an accident were held admissible under the *res gestae* rule. The Kentucky court emphasized its earlier opinion in National Life and Accident Insurance Co. v. Hedges, 233 Ky. 840, 847, 27 S.W.2d 422, 425, wherein it had declared: "Spontaneity, as distinguished from a mere matter of time, has come to be considered the determining factor." In that case, the statement held to have been properly received in evidence under the *res gestae* rule was made between ten and fifteen minutes after the occurrence concerning which it was made. There was obviously no longer time lapse in the instant case.

In Kentucky, statements concerning a collision with an automobile made by a truck driver as a part of the *res gestae* have been declared admissible against his employer, a truck line company. J. N. Youngblood Truck Lines v. Hatfield, 304 Ky. 600, 608, 201 S.W.2d 567.

This court has stated that the *res gestae* rule permits introduction in evidence of statements substantially contemporaneous with the event, if the statements are explanations of a spontaneous nature arising from the transaction, itself, before the declarant has had opportunity for deliberation or reflection. It was pointed out that the rule *in Kentucky* as to the admissibility of such evidence "is at least as liberal as the general rule, if not more so." Somogyi v. Cincinnati, N. O. & T. P. Ry. Co., 6 Cir., 101 F.2d 480, 481, 482.

(2) In our judgment, the district court committed reversible error in directing a verdict for the defendant. It would seem almost academic to restate that, upon the motion of a defendant for a directed verdict, the trial judge should overrule the motion unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for him. This principle is so well settled as to require no citation of authority; but see for example Goodall Company v. Sartin, 6 Cir., 141 F.2d 427, 432, certiorari denied, 323 U.S. 709, 65 S.Ct. 34, 89 L.Ed. 571; Ike Watson v. Southern Bus Lines, Inc., 6 Cir., 186 F.2d 981. The able and experienced trial judge is undoubtedly most familiar with the rule, but we think he erred in failing to apply it to the evidence introduced in this case.

During colloquy upon argument of the motion, the judge said that the whole trouble was that appellant gave notice of his intention to pass when four or five hundred yards from a very narrow place in the road; and that, if he did get a comeahead signal, there was no indication that he intended to pass at the narrow place "where two trucks could hardly pass in comfort". Appellant's action in attempting to pass was stated to be contributory negligence as a matter of law. The judge said that no negligence of the defendant had been shown, and that if there were any negligence in the case it was that of the plaintiff. In formal findings of fact and conclusions of law, the court reasserted that appellant's attempting to pass was contributory negligence as a matter of law. The first conclusion asserted that "the court makes no finding as to whether or not the driver of defendant's truck was or was not negligent."

We think that, in these findings and conclusions, the district court overlooked the testimony of the plaintiff to the effect that he had received a clearance signal from the Dixie truck driver and had begun his passing move in time to overtake the Dixie rig before entering upon·the narrow portion of the highway when the speed of the front vehicle increased so rapidly as to prevent his being able to do so. The police officer testified that, although it would be close, there was sufficient room on the highway at the point between·the guard rails for the one vehicle to pass the other. The Court of Appeals of Kentucky has said that "negligence cannot be measured in inches." Maggard v. Johnson, 312 Ky. 770, 229 S.W. 2d 764. The eye witness, Reynolds, testified that it appeared as if a part of the Dixie rig might have crossed the center line of the highway at the point of the accident. He said, moreover, that he saw the Dixie truck swerve toward the center of the road and pull back immediately. Thus, from the evidence, jury issues were plainly presented both as to negligence and as to contributory negligence.

The court, however, asserted in its formal findings that "the plaintiff Hinton, before attempting to pass the truck of the defendant, did not give warning of his intention so to do by sounding his horn or other clearly audible sounding device", ·from which. the conclusion was announced that he "was guilty of contributory negligence as a matter of law in failing to give the signals required by the statutes of the State of Kentucky evidencing his intent to pass."

The court was referring to Kentucky Revised Statutes, section 189.340, subsection (1), which is a restatement without any material change of the Kentucky law as found in Carroll's Kentucky·Statutes, Annotated, Baldwin's 1936 Revision, section 2739g–40. This section has been considered by the Court of Appeals of Kentucky in several cases, and reads as follows: "Vehicles overtaking other vehicles proceeding in the same ·direction shall pass to the left thereof and shall not again drive to the right until reasonably clear of such vehicles, and the person operating or in charge of the overtaking vehicle shall sound horn or other sound device. before passing such vehicle: Provided that vehicles overtaking street cars may pass same either to the right or left, having due regard for other traffic. (1920, c. 90, p. 415, sec. 10f)."

Appellant cites Wright v. Clausen, 253 Ky. 498, 69 S.W.2d 1062, 104 A.L.R. 480 (decided in 1934), in which a jury verdict for the defendant in a personal injury damage suit was set aside and the case remanded for a new trial. It was held that the trial court had failed to instruct the jury correctly as to the relative duties, required by section 2739g–40 and the two ensuing Kentucky code sections, of the driver of a vehicle overtaking another and of the driver of the vehicle. being overtaken.

Appellant fails to cite the opinion of the highest court of Kentucky on the second appeal of the case, in which a judgment for the defendant on a jury verdict in his favor was affirmed. *There, the defendant was the automobile driver who was attempt-. ing to pass the plaintiff's car.* The Court of Appeals said: "Defendant admits that he did not sound his horn before attempting to pass plaintiff's car, and it is insisted that because of his violation of this duty the court should have peremptorily instructed the jury to find a verdict for the plaintiff. A *violation of a statutory duty, or act of negligence of itself, is not conclusive of the right to recover unless it is shown that such violation or [of] duty or negligent act was the proximate cause of the injury.* By the instruction on contributory negligence [of] the driver of the plaintiff's car, the jury was instructed to find for plaintiff if it believed from the evidence that the defendant failed to perform the duties enumerated in the instruction, which included the duty to sound the horn, if they believed that the failure to perform· such duties or any one of them was the proximate cause of the injury. *By this instruction the issue with respect to the proximate cause of the injury was properly submitted to the jury."* [Italics supplied.] Wright v. Clausen, 263 Ky. 298, 301, 92 S. W.2d 93, 94. ·

This authority clearly indicates that, in view of the evidence in the case at bar, the trial judge should have submitted to the

jury under appropriate instructions the issue whether the failure of appellant to blow his horn or the swerving of appellee's truck was the proximate cause of the accident.

Appellee cites Home Laundry Co. v. Cook, 277 Ky. 8, 14, 125 S.W.2d 763, 766. We think that authority does not sustain the district court's action in directing a verdict, for the Court of Appeals of Kentucky declared: "The violation of the terms of a statute or ordinance with reference to the operation of automobiles is negligence per se. If such negligence contributes to bring about a collision to such an extent that, but for such negligence, it would not have occurred, the plaintiff is barred by contributory negligence. Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564." In the case cited by the court, this clear-cut statement appears: "A violation of the terms of a statute or ordinance is in this jurisdiction held to be negligence per se. But, of course, that negligence must have been the proximate cause of the injury in order to authorize recovery of compensation. (Citing five Kentucky decisions)." 268 Ky. 606, 105 S.W.2d 566.

It is true that the opinion in the other cases relied upon by appellee, Cook v. Gillespie, 259 Ky. 281, 285, 82 S.W.2d 347, states the general proposition that it is the duty of an automobile driver before passing a truck on a highway to see that he can do so in safety and to give the signals required by section 2739g–40. However, this assertion was immediately followed by another: that the problem in the case was to find whose negligence was the proximate cause of the collision, which was a question for the jury to answer, and that ordinarily the finding of the jury "should not be molested". It was added that where the court has not given correct instructions with the result that the jury may have been led astray, the ruling should be otherwise. The conclusion was drawn that there was enough evidence to cause the court to permit the jury under proper instructions to find against the driver of a truck traveling in front of an automobile in which the plaintiff was riding when in an attempt to pass it struck the truck; but was not enough to sustain a directed verdict, which in effect had been given by the trial judge in his instructions to the jury. Wherefore, the judgment was reversed.

In the brief of appellant, the Kentucky statute is not discussed nor is any case cited construing it, although the opinion in C. L. & L. Motor Express v. Lyons, 245 Ky. 611, 614, 53 S.W.2d 978, 979, seems pointedly helpful to him. There, the appellant motor express company insisted that a peremptory instruction in its favor should have been given where the injured lady had started to pass its vehicle and "at least a scintilla of evidence" tended to show that the truck driver "negligently changed his course, and suddenly interposed the truck" in her path. The state court of appeals said: "The testimony was cogently contradicted by other testimony, but in testing the right to a peremptory instruction, we must accept the evidence for the plaintiff as true, and deduce the inferences that may be reasonably drawn therefrom. (Citing cases). The lights on the Lyons car were burning, and it is apparent that the driver of the truck could see her car approaching on the street car track. Hence, in so far as the driver of the truck was concerned, *it was not necessary for Mrs. Lyons to sound her horn, as required by the statute for the benefit of vehicles being overtaken and to be passed.* Ky.St. 2739g–40. If the driver of the truck was negligent in any respect, under the circumstances narrated, it consisted in changing the course of the truck from the south side of the street toward the center, bringing it directly, suddenly, and unnecessarily in front of the Lyons car. Whether he did so in fact, under the evidence, was a question for the determination of the jury. Viewed in this light, the evidence was sufficient to carry the case to the jury." [Italics supplied.]

It is well established in Kentucky that the violation of a statute or ordinance is negligence *per se,* but that such negligence of a defendant will not entitle an injured plaintiff to recover unless such violation of the statute is the proximate cause of the injury. Linder v. Davis, 309 Ky. 668, 670, 218 S.W.2d 673; Greyhound Terminal of Louisville, Inc. v. Thomas, 307 Ky. 44, 45,

209 S.W.2d 478; Howard v. Fowler, 306 Ky. 567, 571, 572, 207 S.W.2d 559; Brown Hotel v. Levitt, 306 Ky. 804, 807, 209 S.W. 2d 70; Murphy v. Homans, 286 Ky. 191, 194, 150 S.W.2d 14; Rodgers v. Stoller, 284 Ky. 108, 110, 111, 143 S.W.2d 1047; Rutherford v. Smith, 284 Ky. 592, 595, 145 S.W.2d 533.

By the same token, a plaintiff cannot be barred from recovery in an action for damages because he violated a statute, unless such violation is shown to be the proximate cause of his injury.

If the evidence in a case presents, as this case does, an issue of fact as to proximate cause in relation to either negligence or contributory negligence, the case should be submitted to a jury under appropriate instructions.

There would seem to be as cogent reasons for submitting this case to the jury as appeared in Garrison v. Dixie Traction Co., decided June, 1950, 313 Ky. 565, 232 S.W.2d 997, wherein the Kentucky appellate court reversed a judgment directing a verdict for the defendant where an automobile in which plaintiff was riding had been driven into the rear of a bus.

The judgment of the district court is reversed and the case is remanded for a new trial.

SIMONS, Circuit Judge (dissenting).

The appellant, with a 7 foot wide truck trailing another truck by means of a tow bar, was trying to pass an 8 foot wide truck and trailer upon a downgrade. He was familiar with the road, knew that it narrowed at the bottom and he could see the guard rails when he undertook to start to pass some 400 yards away. He should have expected that the Dixie truck would be compelled to swerve somewhat to the left, that speed would be accelerated upon a downgrade, and that there should be some sway of the trailer and his own tow. My judgment is that appellant's operation was contributorily negligent assuming evidence of primary negligence.

While I agree that contributory negligence must be shown to have been a proximate cause of the accident and that this is ordinarily a question for the jury, it seems to me that the causal relationship was conclusively established by the appellant's own evidence. He failed to blow his horn although required to do so by Kentucky law in passing another vehicle. The accident occurred in the daytime and ordinary experience on the highway should have warned him that merely blinking his lights was not a sufficient notice that he intended to pass, even if such signaling may be depended upon at night. If there is any persuasiveness in the observation of the Kentucky Court that "negligence cannot be measured in inches", whatever that may mean, then it may also logically be said that "due care may not be measured by inches".

I would affirm the judgment.