578 F.2d 422
 48 A.L.R.Fed. 442, 188 U.S.App.D.C. 180,
3 Fed. R. Evid. Serv. 1492
 Sonia HILYER, Individually, as administratrix of the Estate
of James H. Hilyer, III, Deceased, and as natural
guardian of her two minor sons, James H.
Hilyer, IV and Brian Michael
Hilyer, Appellants,
v.
HOWAT CONCRETE COMPANY, INC., et al.
Sonia HILYER, Individually, as administratrix of the Estate
of James H. Hilyer, III, Deceased, and as natural
guardian of her two minor sons, James H.
Hilyer, IV and Brian Michael Hilyer
v.
HOWAT CONCRETE COMPANY, INC., et al. (two cases).
Appeal of NATIONAL LOSS CONTROL SERVICE CORPORATION.
Appeal of BECHTEL CONSTRUCTION CO., Washington Metropolitan
Area Transit Authority and District of Columbia.
 Nos. 77-1263, 77-1264 and 77-1267.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 28, 1978.
Decided May 10, 1978.
 
 George S. Leonard, Washington, D. C., for Sonia Hilyer, appellant in No. 77-1263, and cross-appellee in Nos. 77-1264 and 77-1267.
 Patrick J. Attridge, Rockville, Md., for appellee Howat Concrete Co., Inc., et al., in Nos. 77-1263, 77-1264, and 77-1267.
 Lawrence T. Scott, Washington, D. C., for appellee Nat'l. Loss Control Service Corp., in Nos. 77-1263 and 77-1267, and cross-appellant in No. 77-1264.
 William D. Foote, Jr., Rockville, Md., with whom James C. Gregg, Washington, D. C., was on the brief, for appellees Bechtel, WMATA, and District of Columbia, in Nos. 77-1263 and 77-1264, and cross-appellant in No. 77-1267.
 Before McGOWAN, TAMM* and LEVENTHAL, Circuit Judges.
 Opinion for the Court filed by McGOWAN, Circuit Judge.
 McGOWAN, Circuit Judge:
 
 
 1
 Appellant brought a wrongful death action in the District Court after her husband died from injuries sustained in the course of his employment as a construction worker on a subway construction project in Washington. Although several parties were named as defendants, the case proceeded through trial only against appellee Howat Concrete Co., owner and operator of the concrete mixer truck which ran over the decedent.[1] After the initial trial, the jury returned a verdict for the defendant on a finding of contributory negligence, but the trial judge, concluding that certain hearsay testimony had erroneously been admitted into evidence, granted a motion for new trial. At the second trial, however, the same testimony was again received in evidence, and again the jury found in favor of the defendant. Judgment was entered accordingly.
 
 
 2
 We think that only the question of admissibility of the hearsay testimony merits discussion.[2] For the reasons appearing hereinafter, we conclude that the challenged testimony was admissible, and we affirm the judgment of the District Court.
 
 
 3
 * The project on which the decedent had been working was at the corner of an intersection of two streets in downtown Washington, and it was necessary to place traffic barricades along the street between the traffic lanes and the worksite. The decedent and another worker, Howard Simms, had just placed a barricade on the street when a concrete mixer truck, making a right turn, hit the barricade and ran over the former.
 
 
 4
 The challenged testimony involves a statement made by Simms to a policeman, Officer Strother, who arrived at the scene soon after the accident occurred. Officer Strother's contemporaneous notes, as read at the trial, state:
 
 
 5
 Howard Simms . . . states . . . Jim never looked at traffic set barricade down and backed into veh. # 1 (the concrete mixer truck) which was making right turn.
 
 
 6
 R. 139, Tr. 139. Simms' remark that the decedent "backed into" the truck was of crucial importance at trial because it was the only evidence which directly substantiated appellee's defense of contributory negligence.[3] However, less than three hours after the accident, Simms gave a written statement at police headquarters in which he indicated that he did not see the accident and only assumed that the decedent backed into the truck. Moreover, Simms testified (at both trials) that he had not seen the accident occur and did not remember talking with Officer Strother at the scene of the accident. Mem. Op. (Aug. 15, 1975) at 6, J.A. at 171; R. 139, Tr. 125-43.
 
 
 7
 At the trial which led to this appeal, Simms, called by appellee, testified that he "was so excited" at the time the police questioned him at the scene that he could not recall the questions asked of him. (R. 139, Tr. 127.) He also stated that he "didn't see exactly how the accident happened." (R. 139, Tr. 135.) At this point, appellee's counsel approached the bench and proposed to examine Simms concerning the oral statement made to Officer Strother. In response to an objection raised by appellant, appellee cited Rule 607 of the Federal Rules of Evidence, which allows a party to impeach his own witness. The court thereupon overruled appellant's objection and allowed the statement to be read to Simms, who, when asked whether he made the statement, replied, "Well, I was so upset, I wouldn't know exactly." (R. 139, Tr. 139.) Appellant's counsel did not request, and the court did not on its own give, an instruction to the jury limiting its consideration of the statement to an impeachment of Simms' testimony in court.
 
 
 8
 Appellee next called to the stand Officer Strother, who testified that he received a radio report of the accident at 6:47 p.m., arrived at the scene of the accident at 6:53 p.m., and interviewed Simms soon thereafter. Although Officer Strother estimated that the accident had occurred at 6:30 p.m. (R. 139, Tr. 158), this estimate appears to be too early, for it was established that the construction crew did not even arrive at the site until 6:30 (R. 137, Tr. 28). When asked to relate to the court his interview with Simms, Officer Strother testified as to Simms' statement from his present recollection, the court overruling appellant's timely objection that the statement was hearsay. (R. 139, Tr. 158-59.) Officer Strother further testified that he had requested Simms to repeat the statement, that he transcribed it verbatim into his notebook, and that Simms had immediately read that transcription and expressed his agreement with it. (R. 139, Tr. at 159.) The notes were not themselves placed in evidence.
 
 
 9
 On cross-examination by appellant's counsel, Officer Strother at first stated that Simms had been excited at the time of the interview at the accident scene. Appellant's counsel then read to the officer portions of his testimony at the first trial at which he repeatedly asserted that Simms had not appeared nervous. Upon further questioning, the officer admitted that his recollection of the events in question was not as good presently as it had been at the first trial. (R. 139, Tr. 183-85.)
 
 II
 
 10
 We conclude that the statement given by Simms to Officer Strother at the scene of the accident was admissible not only to impeach Simms' later inconsistent testimony in court but also for the truth of the matter asserted, namely, that the decedent without regard to traffic conditions backed into the street and into the concrete mixer truck which ran over him. We first address the latter point.
 
 
 11
 The Federal Rules of Evidence, which became effective on July 1, 1975, perform the useful function of codifying the exceptions which have developed in the federal courts to the general prohibition on the admission into evidence of hearsay. As presented in the District Court proceedings, Simms' statement clearly qualified as hearsay,[4] and thus was inadmissible unless it was encompassed by one of the exceptions to the hearsay rule listed in Rule 803.[5] Although the record does not disclose with precision under which hearsay exception the trial judge admitted the statement,[6] we find no error in such admission because the statement was within the "excited utterance" exception stated in Rule 803.
 
 
 12
 The first two exceptions in Rule 803 read as follows:
 
 
 13
 (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
 
 
 14
 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 
 
 15
 Prior to the adoption of the Federal Rules, these two exceptions were often lumped together as part of a "res gestae" exception to the hearsay rule. See, e.g., Hinton v. Dixie Ohio Exp. Co., 188 F.2d 121 (6th Cir. 1951); Wabisky v. D. C. Transit Systems, Inc., 114 U.S.App.D.C. 22, 309 F.2d 317 (1962). The Federal Rules, on the other hand, make clear that testimony qualifying under one exception is admissible even if not encompassed by the other. In the case at bar, the statement was admissible under the second of these exceptions.[7]
 
 
 16
 The statement clearly meets one of the two prerequisites for admission as an excited utterance: it was "a statement relating to a startling event or condition." We conclude that it also met the second prerequisite: it was made while the declarant, Simms, was "under the stress or excitement cause by the event." The most damaging testimony relating to the latter issue was by Simms himself, as described heretofore. In addition to this testimony, Simms' lack of recall of his conversation with Officer Strother may also indicate that he was under stress at the time the officer spoke with him.
 
 
 17
 We recognize that the basis on which we have concluded that Simms' prior oral statement was admissible was also the basis for admission of the statement at the first trial, and that the trial judge at the end of that trial concluded that the statement should not have been admitted, Mem. Op. at 9, J.A. at 173. Of course, the same judge then did admit the statement in the second trial.[8] We believe that these actions can be reconciled.
 
 
 18
 First, the evidence received at the first trial did not demonstrate that Simms had been excited when he made the statement. In fact, as noted previously, Officer Strother's testimony at that trial expressly stated that Simms did not appear excited at the time he made the statement, and neither Simms nor anyone else testified that he had been under stress. Of course it is quite conceivable that Simms could have been under stress, as he testified at the second trial that he had been, but not have appeared excited to Officer Strother. Nevertheless, when the only direct evidence on the matter indicated lack of excitement as was true at the first but not at the second trial the trial court was justifiably dubious about whether the statement was admissible as an excited utterance.
 
 
 19
 Second, in its opinion ordering a new trial, the District Court did not rely exclusively on the determination that Simms' statement could not qualify as an excited utterance. It appears that a major consideration motivating the trial judge to conclude after the first trial that the statement should not have been admitted was that it was not confirmed by Simms in his statement given at the police station later on the night of the accident, and that indeed in this later statement Simms indicated that he had not actually seen the accident. While the trial judge concluded at the end of the first trial that these considerations "destroy(ed) entirely (the) value and worth" of the prior oral statement, Mem. Op. at 8, J.A. at 173, we agree with his subsequent determination at the second trial that these were matters for the jury to decide. At the second trial, Simms was cross-examined about his oral statement, and the circumstances surrounding the giving of both that statement and the later statement were brought out in direct and cross-examination of Simms and others. Issues relating to credibility, motivation, and probative weight were raised and were properly left to the jury.
 
 
 20
 At the first trial, Simms was not offered the opportunity to rebut or otherwise explain his oral statement to Officer Strother, since the statement was not read until Officer Strother was on the stand and Simms was not thereafter recalled to the stand. Thus, as the trial judge ruled in his grant of a new trial, the statement was not admissible for impeachment purposes. Both Rules 613(b) of the Federal Rules of Evidence and the prior law in this circuit, see United States v. Wright, 160 U.S.App.D.C. 57, 489 F.2d 1181 (1973), require that a witness be afforded an opportunity to explain a prior inconsistent statement when it is proved by extrinsic evidence. At the second trial, Simms was questioned about the statement. Thus it would have been admissible for impeachment purposes, with a limiting instruction, even if it had not been encompassed within an exception to the hearsay rule. As the trial judge recognized, it is irrelevant that Simms was called by the appellee, since under Rule 607, a witness may be impeached by any party, including the party calling him.
 
 
 21
 In conclusion, without expressing any opinion on whether the admission of Simms' out-of-court statement at the first trial necessitated the grant of a new trial, we hold that the statement was properly admitted at the trial which led to this appeal, both for impeachment of Simms and for the truth of the matter asserted. Appellant Hilyer's other contentions of error also being without merit, see note 2 supra, the District Court is
 
 
 22
 Affirmed.
 
 
 
 *
 Circuit Judge TAMM did not participate in this decision
 
 
 [1]
 No. 77-1263 involves the suit against Howat. In addition, appellant sued National Loss Central Service Corp., Bechtel Construction Co., Washington Metropolitan Area Transit Authority, and the District of Columbia, essentially alleging that these defendants had failed to perform their duties to assure safety at subway construction sites. In Nos. 77-1264 and 77-1267, appellant challenges the District Court's dismissal of the complaint as to each of these parties at the conclusion of appellant's opening statement to the jury. We find no error in these dismissals and accordingly affirm in Nos. 77-1264 and 77-1267
 
 
 [2]
 We also conclude that the trial court did not err in refusing to admit in evidence traffic regulations on reckless driving, negligent homicide, and yellow lights, and that the court appropriately exercised its discretion in refusing to allow appellant to call a witness, not newly discovered, when appellant failed to inform the court or appellee until four days before the start of the second trial of its desire to call said witness. Given our disposition of this appeal, we have no occasion to rule on the allegations of error in instructions to the jury on damages
 
 
 [3]
 The critical importance of the statement is indicated by the District Court's conclusion after the first trial that if the statement had not been admitted into evidence, "there (would have been) insufficient evidence of the decedent's contributory negligence to submit to the jury," Mem. Op. (Aug. 15, 1975) at 9, J.A. at 174. It was on this basis that the court, upon determining the testimony should not have been admitted, ordered a new trial
 
 
 [4]
 That is to say, it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R. of Ev. 801(c)
 
 
 [5]
 Rule 803 exceptions apply whether or not the declarant, in this case, Simms, is available as a witness. Rule 804 exceptions apply only when the declarant is not available to testify
 
 
 [6]
 When appellee first sought to question Simms concerning the oral statement, it was clearly for the purpose of impeaching him. However, the court recognized that appellee would seek to introduce the statement for the truth of the matter asserted through the testimony of Officer Strother, "(a)s being made by the witness immediately following or soon after the policeman arrived at the scene," (R. 139, Tr. 138). Thus, it appears that the trial court considered the statement to be within the "present sense impression" exception to the hearsay rule, see infra. Later, when Officer Strother actually testified as to the statement, appellant's counsel merely stated, "Objection," and the court replied, "Overruled." (R. 139, Tr. 158-59.) At a subsequent bench conference the court cited Federal Rule 607 as authority for allowing appellee to impeach Simms when he was on the stand (R. 139, Tr. 167)
 
 
 [7]
 It is doubtful that Simms' statement to Officer Strother comes within the present sense impression exception. By our calculations, the statement could not have been made until at least fifteen minutes and possibly up to forty-five minutes after the accident. The accident took place soon after the construction crew arrived at the site at 6:30, and Officer Strother, who arrived at 6:53, interviewed two other witnesses before he spoke with Simms. The police officer remained at the scene of the accident for twenty-five minutes. (R. 139, Tr. 157-58.) This time span hardly qualifies as "immediately" after the accident as that term is used in Rule 803(1), particularly in view of the commentary on that Rule contained in the Advisory Committee Notes. This states that the "most significant practical difference (between 803(1) and 803(2)) will lie in the time lapse allowable between event and statement," and that 803(1) "recognizes that in many, if not most, instances, precise contemporaneity is impossible, and hence a slight lapse is allowable." 56 F.R.D. 187, 304 (1973) (emphasis added). The thrust of this commentary is that in a circumstance such as that before us, an out-of-court statement made at least fifteen minutes after the event it describes is not admissible unless the declarant was still in a state of excitement resulting from the event
 
 
 [8]
 The first trial began on June 29, 1975; the new Federal Rules of Evidence became effective on July 1, 1975. Under the terms of the enacting legislation, the new rules became applicable to cases pending as of July 1, "except to the extent that application of the rules would not be feasible, or would work injustice." Pub.L. 93-595, § 1. It appears from the transcript of the first trial that the court proceeded on the assumption that the new rules were applicable, and in its memorandum opinion granting a new trial, the court cited and relied upon several of the new rules. In any event, we do not agree with the statements in the briefs on this appeal that the trial judge's decision to admit Simms' statement at the second trial was attributable to the new rules taking effect in the interim between the two trials. The only rule relevant to admissibility that arguably changed prior evidentiary principles in this circuit is Rule 607, allowing a party to impeach his own witness, and, apparently because Simms was not examined concerning his oral statement, this issue did not arise at the first trial