| | |
|---|---|
| **From:** | Patel, Sanjay (CRT) ████████████████████ |
| **Sent:** | Wednesday, June 5, 2024 10:00 PM |
| **To:** | Christopher Macchiaroli; Kollar-Kotelly Chambers |
| **Cc:** | Emma Mulford; Howland, Christopher (USADC) |
| **Subject:** | RE: United States v. Dupree: June 5, 2024 |

**CAUTION - EXTERNAL:**

Chambers:

The government is noting its continuing objection to the admissibility of the radio run recording, and we rely on the arguments submitted in this morning's email to the Court.

Thank you,
Sanjay Patel and Christopher Howland
U.S. Department of Justice

**From:** Christopher Macchiaroli ████████████████████
**Sent:** Wednesday, June 5, 2024 7:07 PM
**To:** Kollar-Kotelly Chambers ████████████████████
**Cc:** Patel, Sanjay (CRT) ████████████████; Emma Mulford ████████████████████; Howland, Christopher (USADC) ████████
**Subject:** [EXTERNAL] United States v. Dupree: June 5, 2024

Chambers:

Good evening. Please see the attached response to the Court's questions.

Regards,

**Christopher Macchiaroli, Esq.**
**Partner**

**Silverman, Thompson, Slutkin & White LLC**
1775 I Street, NW, Suite 1150
Washington, DC 20006

████████████████████
████████████████

www.silvermanthompson.com

**From:** Kollar-Kotelly Chambers < ████████████████████
**Sent:** Wednesday, June 5, 2024 1:52 PM
**To:** Howland, Christopher (USADC) < ████████████████████ >; Christopher Macchiaroli
< ████████████████████ >; Kollar-Kotelly Chambers < ████████████████████ >

1

Cc: Patel, Sanjay (CRT) <​⬛⬛⬛⬛⬛⬛⬛⬛​>; Emma Mulford <​⬛⬛⬛⬛⬛⬛⬛⬛​>
Subject: RE: United States v. Dupree: June 4, 2024

Defendant argues that there are three portions of the radio run communications that fit under the present sense impression exception:

> (1) "Officer Dupree's immediate notification that he initiated a traffic stop on Mr. Sinclair and the providing of his license plate to Dispatch."
> (2) "Officer's Dupree's notification that he needed backup"
> (3) "Officer's Dupree's notification of OC deployment and need for 'fireboard' (EMS)"

For each of these three categories, the Court **ORDERS** Defense counsel to provide direct quotes from the transcript / audio of the radio run communications specifying what the exact statements are by **7:15 pm tonight**. It is not sufficient to say that the statement is that Officer Dupree notified Dispatch of OC deployment. We need the direct quotes of what was said on the radio, with citations to the transcript / audio.

Next, as provided by Defendant via email, the Court has the timestamps from the Report of Internal Investigation that indicate when certain radio communications were made, notated as elapsed time from the beginning of the traffic stop. The recording begins at 1:13 am on August 4, 2019. 00:00 is Officer Dupree's call that he initiated a traffic stop. 00:56 is when he requested backup. 02:45 is when he requested a license check. 15:32 is when he requested fireboard. If any of these are incorrect, please inform the Court by **7:15 pm tonight**.

The Court **ORDERS** Defense counsel to provide the time of the occurrence of the underlying events related to (1) and (3) by **7:15 pm tonight**. For (1), that would be when Defendant Dupree initiated the traffic stop. For (3), that would be when the OC was deployed. Defendant shall also provide where that information is coming from – i.e., what is the source for the time of the occurrence for these events.

---

From: Howland, Christopher (USADC) <​⬛⬛⬛⬛⬛⬛⬛⬛​>
Sent: Wednesday, June 5, 2024 6:43 AM
To: Christopher Macchiaroli <​⬛⬛⬛⬛⬛⬛⬛⬛​>; Kollar-Kotelly Chambers <⬛⬛⬛
⬛⬛⬛⬛⬛>
Cc: Patel, Sanjay (CRT) <​⬛⬛⬛⬛⬛⬛⬛⬛​>; Emma Mulford ⬛⬛⬛⬛⬛⬛⬛⬛>
Subject: RE: United States v. Dupree: June 4, 2024

CAUTION - EXTERNAL:

Good Morning Chambers:

The Government respectfully submits the following response to the Defendant's attempt to admit the radio run discussed in the below email chain. As the Court already held, the Defendant may not introduce his own statements that constitute inadmissible hearsay. *See* ECF No. 76 at 8 ("The Court agrees that, as a general matter, Defendant will be precluded from presenting his own out-of-court statements in a way that would violate the rules of evidence, including if such statements would constitute inadmissible hearsay."); *see also United States v. Griffith*, No. 21-244-2, 2023 WL 2043223, at *6 (D.D.C Feb. 16, 2023, J. Kollar-Kotelly) ("The Court holds admissible as non-hearsay Defendant's statements when offered by the Government and finds inadmissible as hearsay Defendant's statements when offered by Defendant in his case-in-chief

2

unless an exception applies.") That is exactly the kind of the statements the Defendant is attempting to introduce.

As an initial matter, the Defendant faults the Government for removing the radio run from its exhibit list. But as the Court pointed out, in the lead-up to trial, the anticipated presentation of evidence and witnesses is fluid and likely to change. The radio run exhibit was included on the Government's initial exhibit list because the Government sought to be over-inclusive and provide notice to Defendant of any potential exhibits it might introduce at trial. The Government never contemplated, and certainly never agreed, that exhibits listed on its exhibit list would be admitted by the Defendant.

Turning to the last of the Defendant's statements he seeks to admit—the "prior conviction" notification by dispatch—that statement would only be admissible if the Defendant were to testify.  With respect to the other three statements, the Defendant argues that they constitute present sense impressions and are therefore not hearsay. Although the first two statements— that the Defendant notified dispatch that he had initiated a traffic stop and that he needed backup—are closer calls with respect to the present sense impression exception, the third statement that the Defendant notified dispatch of "OC deployment and need for fireboard" do not fall within the exception. In order for the present sense impression exception to apply, , the statement must describe or explain an event or condition, which the declarant perceived firsthand, which was made contemporaneously – either during or immediately thereafter the event or condition." *United States v. Wills*, Case No. 18-0117 (PLF), 2018 WL 6716096, at *4 (D.D.C. Dec. 21, 2018). The statement that EMS was needed because there had been an OC deployment was not made contemporaneously with the pepper spray. Nor does the statement describe anything about the pepper spray incident at all.  Unlike the statement in *Wills*, in which the declarant stated that "he threw it in the bushes, . . he threw it to the right," a call for EMS because there had been an OC deployment does not describe the event or condition that is the subject of the statement.  In other words, if the statement in question had described any aspect of the pepper spray incident, the statement might fall within the exception. It does not, and thus, the statement is not admissible.

Furthermore, there is no indication from the Defendant about the amount of time that passed between the pepper spray incident and the Defendant's call to dispatch.  At a minimum, the statement to dispatch about OC deployment was not made contemporaneously.  The amount of time that has elapsed between the statement and the qualifying event is an important factor, as the passage of time is "the effective proxy for the reliability of the substance of the declaration." . *Wills*, 2018 WL 6716096, at *4. In the D.C. Circuit, it is clear that fifteen minutes is too long to satisfy the contemporaneity requirement, but beyond that, there is very little guidance. *Compare Hilyer v. Howat Concrete Co.*, 578 F.2d 422, 426 n.7 (D.C. Cir. 1978) (explaining that an "out-of-court statement made at least fifteen minutes after the event it describes is not admissible"), with *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 234 (D.D.C. 2014) (holding a statement admissible when the statement was made within moments or seconds of the event).

For these reasons, the statements on the radio run should not be admitted.

Christopher Howland and Sanjay Patel
U.S. Department of Justice

**From:** Christopher Macchiaroli < █████████████████████████ >
**Sent:** Tuesday, June 4, 2024 7:29 PM
**To:** Kollar-Kotelly Chambers < ████████████████████████ >
**Cc:** Howland, Christopher (USADC) < ██████████████ >; Patel, Sanjay (CRT) < █████████████ >; Emma Mulford < █████████████ >
**Subject:** [EXTERNAL] United States v. Dupree: June 4, 2024

Chambers:

The Government intends to seek admission of the following statements from the radio run: (i) Officer Dupree's immediate notification that he initiated a traffic stop on Mr. Sinclair and the providing of his license plate to Dispatch; (ii) Officer's Dupree's notification that he needed backup; (iii) Officer's Dupree's notification of OC deployment and need for "fireboard" (EMS); and (iv) Dispatch's notification of Mr. Sinclair's "prior" in PG County. The attached chronology of the radio run from the Report of Investigation (as excerpted) that was produced by the Government in discovery was in the attachment submitted earlier today and is also attached to this submission. It provides the chronology of the radio run at issue in this case based on a certified copy of the radio run provided by PG County. A copy of the radio run was produced by the Government to Chambers as part of its May 16 and May 23 Exhibit Productions and identified as Government Exhibit 200.

Subparts (i)-(iii) are all present sense impressions in that they are "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it." FED. R. EVID. 803(1); *see, e.g.*, *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 233-34 (D.D.C. 2014) (admitting officer's radio run statements as present sense impressions: "was on the "[f]our hundred block of *Kenyon*," "[t]ried to stab me, ma''m. My gun jammed. Get official on this location"). Subparts (i)-(iii) were made in real time while the events were occurring. *See United States v. Wills*, No. 18-0117 (PLF), 2018 WL 6716096, at *4 (D.D.C. Dec. 21, 2018) (satisfying necessary factors).

During Officer Dupree's notification of OC deployment, Mr. Sinclair is yelling/screaming in the background in response to the OC deployment. The words are not decipherable on the radio run. The entire episode, including, Officer Dupree making the radio run communication and Torrence Sinclair and his sister yelling are in the BWC video that the Government is seeking to admit into evidence without objection as GX 101. The audio on the video depicts dispatch communicating with Officer Dupree, but Officer Dupree's words cannot be heard given the yelling/screaming in the background.

As it pertains to the radio run, the Defense is not seeking to identify the yelling in the background, but rather, Officer Dupree's notification of the deployment. There will be zero prejudice as to the yelling in the background, when the jury will have the full audio of the BWC camera video to listen to the various yelling made during the identical period of time. In some instances, Mr. Sinclair is yelling, I cannot breathe, in other instances, he is yelling, get my lawyer. Even if not a present sense impression, which it is, the statement can also be admitted for the non-hearsay purpose of Officer Dupree providing notification to Dispatch, not for the truth of the matter asserted, that OC was deployed, which is undisputed in this case. This purpose is essential given that the Government as recently as in its Trial Memorandum (at 6) (D.E. 73) claimed that even though Officer Dupree was the officer in charge, Corporal Buie summoned EMS. Moreover, even if not otherwise admissible, which it is, if the Government through witnesses or arguments, contends that Officer Dupree did not seek medical attention, the radio run could be used as impeachment evidence.

Finally, the defense never argued that Dispatch's notification was admissible as a present sense impression. The defense is not arguing the truth of the matter asserted and accordingly, the information is not hearsay. The Government has conceded authenticity of the radio run. The defense is not trying to prove the prior criminal contact, it is proving what was told to Officer Dupree, regardless of whether it was true or not, which is

admissible, *regardless* of whether or not Officer Dupree testifies at trial. *See Jones v. United States*, 934 F. Supp. 2d 284, 290 (D.D.C. 2013) ("The Court also notes that while many of the statements contained within the police report are 'out-of-court' statements, it does not appear that they are being used in this context to 'prove the truth of the matter asserted.' Fed. R. Evid. 801(c). Rather, the statements are being offered by the defendants to establish that certain statements were made and their effect on the listener, Officer Kadiev.").

**Christopher Macchiaroli, Esq.**
**Partner**

**Silverman, Thompson, Slutkin & White LLC**
1775 I Street, NW, Suite 1150
Washington, DC 20006

www.silvermanthompson.com

---

From: Kollar-Kotelly Chambers ██████████████████████████
Sent: Tuesday, June 4, 2024 1:39 PM
To: Patel, Sanjay (CRT) <████████████████████>; Christopher Macchiaroli <████████████████████████████>;
Kollar-Kotelly Chambers <████████████████████>
Cc: Howland, Christopher (USADC) <████████████████████>; Emma Mulford
<████████████████████████>
Subject: RE: United States v. Dupree: June 3, 2024

Defendant sent the below email regarding the Defendant's radio run communications relating to the traffic stop of T.S. which, they state, "contains Officer Dupree's present sense impressions and (in certain instance) also captures Mr. Sinclair screaming in the background," dispatch informing Defendant Dupree that T.S. had a prior, and Defendant notifying dispatch of OC deployment and requesting EMS to arrive on the scene. The Government had notified the defense earlier yesterday that it opposed the introduction of the radio run into evidence as hearsay. Defendant argues that the radio run communications should be admissible as: (1) effect on the listener / effect on his state of mind, and (2) present sense impression. The Court will address each argument in turn.

As for the first rationale, Defendant argues that "[d]ispatch's notification of a prior criminal contact for Mr. Sinclair is offered to show its effect on Officer Dupree, as well as, his state of mind when dealing with Mr. Sinclair." The Government agrees in their response that the radio run communications would be admissible for that purpose if Defendant testifies. The Court agrees that this would be admissible if Defendant testifies; such statements would not be hearsay, as they would not be offered for the truth of the matter asserted, but only to show the effect on Defendant Dupree. *See* Fed. R. Evid. 801(c); *see also Jones v. United States*, 934 F. Supp. 2d 284, 290 (D.D.C. 2013) (EGS) (statements that were offered "to establish that certain statements were made and their effect on the listener" were offered for a non-hearsay purpose).

The Court reminds Defendant that it has deferred ruling on whether it would allow introduction of the fact that Defendant Dupree was told from dispatch that T.S. had a prior arrest until the presentation of evidence at trial, subject to analysis under Rule 403. *See* Mem. Op., ECF No. 76, at 11-12. Before making any reference to this evidence (i.e., to the radio run communications), Defendant should bring his intention to the Court's attention for a ruling at that time. The Court also reminds Defendant that the nature of the arrest (i.e., that it

was for burglary) would not be allowed; Defendant acknowledged this via email, stating that he would redact the radio run to remove any such references.

Second, Defendant argues that these communications contain Defendant Dupree's present sense impressions. Under Federal Rule of Evidence 803, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is not excluded by hearsay "regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(1). The advisory committee notes explain that "[t]he underlying theory of [this exception] is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." Fed. R. Evid. 803(1) adv. comm. notes. The subject matter of any statement under the present sense impression exception is limited "to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther." *Id.* Taken together, the statement must describe or explain an event or condition, which the declarant perceived firsthand, which was made contemporaneously – either during or immediately thereafter the event or condition. *United States v. Wills*, Case No. 18-0117 (PLF), 2018 WL 6716096, at *4 (D.D.C. Dec. 21, 2018). These elements must be proven by a preponderance of the evidence. *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 201 (D.D.C. 2014) (GK). The Court notes that the Government cites case law related to the exception of excited utterance, which is a different exception under Rule 803 that contains different requirements and is therefore inapplicable here. *See* Fed. R. Evid. 803(2).

Defendant does not state which statements captured on the radio run communications would qualify as present sense communications, nor does he explain how each element is satisfied. While Defendant is correct that "courts across a multitude of jurisdictions… have collectively concurred that audio tapes and written logs of 911 calls, telephone calls, and police dispatches are admissible under the present sense impression and excited utterance exceptions to the hearsay rule," *United States v. Morrow*, No. 04–355 (CKK), 2005 WL 3163803, at *3 (D.D.C. June 9, 2005), this Court cannot do the same without knowing what the statements are and, therefore, whether they satisfy the elements. Defendant has stated that the communications include Defendant notifying dispatch of OC deployment and requesting EMS to arrive on the scene; such a notification and request do not seem to satisfy the elements. Similarly, Defendant has stated that the communications include dispatch informing Defendant of T.S.'s prior, which also does not satisfy the elements. Defendant says that the communications "contain[] Officer Dupree's present sense impressions," but does not include any additional information. The Court **ORDERS** Defendant to provide information regarding which statements they seek to admit under the present sense impression exception to hearsay and to explain how such statements satisfy the required elements by **7:15 pm tonight**. Government may respond by **7:15 am tomorrow**.

Separately, the Court also **ORDERS** Defendant to indicate if and how he would plan to admit the radio run communication "captur[ing] Mr. Sinclair screaming in the background," including which witness would be used to admit this, how T.S.'s voice would be identified, and how that evidence would be used by **7:15 pm tonight**. Government may respond by **7:15 am tomorrow**.

Finally, in addition to the redaction of the nature of T.S.'s prior arrest, the Court notes that Defendant's introduction of any radio run communications would be limited to that involving T.S.'s traffic stop and not those "concerning the unrelated calls" that the Government references.

**From:** Patel, Sanjay (CRT) <‌‌‌‌‌‌‌‌‌‌‌‌‌‌>
**Sent:** Tuesday, June 4, 2024 12:30 AM


**CAUTION - EXTERNAL:**

Dear Chambers:

The government responds as follows to defense counsel's request to admit the radio run recording.

The government objects to the admissibility of the radio run until and unless the defendant testifies.

Most of the recording contains communications between dispatchers and several officers about local service calls, including the defendant's communications related to Mr. Sinclair's traffic stop. The dispatch communications concerning the unrelated calls is inadmissible because it is not relevant and is hearsay. Regarding the segments related to Mr. Sinclair's traffic stop, the recording contains several communications between the dispatcher and other officers that are clearly inadmissible hearsay.

As for the defendant's recorded statements and the corresponding dispatch responses, those are inadmissible hearsay statements that do not meet the requirements of the present sense impression exception. Those statements were not made under the conditions of a qualifying event. The rule requires that the hearsay statements be made under the stress of excitement from a startling event, and contemporaneous to said event.

A hearsay statement is admissible as a present sense impression requires that "the utterance must be contemporaneous with the excitement engendered by the startling event." *Flythe v. District of Columbia*, 4 F.Supp.3d 222, 233-34 (D.D.C. 2014). The statements in question must be made while the officer "was under the stress of excitement from a startling event, and contemporaneously with the startling event" to satisfy the exception. *Id.*, at 234; *see also United States v. Morrow*, No. 04-cr-355-CKK, 2005 WL 3163803, at *2 (D.D.C. June 9, 2005) (requiring the statement to relate to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

Here, the defendant was not under any condition that would qualify the hearsay statement as a present sense impression. If the defendant elects to testify, then the government agrees that the statement would then be admissible because of its effect on the defendant's state of mind. Otherwise, the radio run in question is inadmissible hearsay.

Thank you,
Sanjay Patel

---

From: Christopher Macchiaroli ■■■
Sent: Monday, June 3, 2024 7:28 PM
To: Kollar-Kotelly Chambers ■■■
Cc: Howland, Christopher (USADC) ■■■ >; Patel, Sanjay (CRT) <■■■ >; Emma
Mulford <■■■ >
Subject: [EXTERNAL] United States v. Dupree: June 3, 2024

Chambers:

In advance of tomorrow, below is the issue that the defense sought to raise earlier today:

As of last Friday's Pretrial Conference, the Government had identified the radio run communications relating to the traffic stop of Mr. Sinclair by Officer Dupree on August 4, 2019 as a Government trial exhibit. The Government identified this Exhibit as GX200. The Defense also sought to admit the same radio run as Defense Exhibit 1. On Sunday, June 2, 2024, the Government produced amended exhibits. GX 200 became another exhibit and the radio run was no longer listed as a Government exhibit. The defense immediately sought confirmation of whether the Government was no longer seeking to admit the radio run and confirming that the Government did not oppose introducing the same exhibit that was on its exhibit list only hours earlier.

Earlier today, before jury selection, the Government notified the defense for the first time that it opposed the introduction of the radio run into evidence as hearsay. The radio run contains Officer Dupree's present sense impressions and (in certain instances) also captures Mr. Sinclair screaming in the background at the parties. The radio run also contains dispatch informing Officer Dupree that Mr. Sinclair has a prior out of PG County conviction. The radio run also confirms that Officer Dupree notified dispatch of OC deployment and requested the Board (EMS) to arrive on scene. Pursuant to the Court's Order, the defense plans to redact the radio run in two instances to remove the nature of the prior contact: "burglary in the second degree."

Notwithstanding the Government's objection to the admissibility of an exhibit that it was seeking to admit itself last Friday, a radio run does not contain inadmissible hearsay. Dispatch's notification of a prior criminal contact for Mr. Sinclair is offered to show its effect on Officer Dupree, as well as, his state of mind when dealing with Mr. Sinclair. The communications on scene by Officer Dupree's are his present sense impressions. *See*, *e.g.*, *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 233-34 (D.D.C. 2014) (admitting officer's statements on radio run as present sense impressions and excited utterances); *United States v. Morrow*, No. 04-cr-355-CKK, 2005 WL 3163803, at *3 (D.D.C. June 9, 2005) ("[C]ourts across a multitude of jurisdictions . . . have collectively concurred that audio tapes and written logs of 911 calls, telephone calls, and police dispatches are admissible under the present sense impression and excited utterance exceptions to the hearsay rule"); *United States v. Cooper*, No. 19-cr-159 (ARR), 2019 WL 5394622, at *3 (E.D. N.Y. Oct. 22, 2019) (admitting officer's radio run statement as a present sense impression, *i.e.*, "[j]ust tried to pull over New York Tags [JCS]8861 in a black hatchback. Subject tried to attempt to hit me. He's now driving east on Belt Parkway, east of Rockaway Parkway.")

This same rationale is the basis for how the Government is seeking to admit the various statements of the parties present at the scene as captured in Body Worn Camera ("BWC") video and iPhone video recordings.

Regards,

**Christopher Macchiaroli, Esq.**
Partner

**Silverman, Thompson, Slutkin & White LLC**
1775 I Street, NW, Suite 1150
Washington, DC 20006

www.silvermanthompson.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**(1) "Officer Dupree's immediate notification that he initiated a traffic stop on Mr. Sinclair and the providing of his license plate to Dispatch."**

Transcription for timestamp 00:00 to 00:24
**Dupree**: This is Fairmount Heights 4.
**Dispatch 1:** Fairmount Heights 4.
**Dupree:** I got a traffic stop for you when you're ready.
**Dispatch 1:** Go ahead.
**Dupree:** You can make it, uh, Eastern and Sheriff. It's going to be on a DC tag of, uh, Tom – Ocean – Union – Charles – Henry – Edward – Number 1, displayed on a white Chrysler 300 [**unintelligible**].

Estimated time of events: 1:14 am, Report of Investigation, Table 1 to Incident Report, US4810.

Transcription for timestamp 02:43 to 03:30
**Dupree:** This is Fairmount Heights 4. 10-29 10-42 when you're ready.
**Dispatch 1:** Go ahead.
**Dupree:** 10-29 for a [unintelligible] male. Last of Sinclair, first of Torrence. Tom – Ocean – Robert – Robert – Edward – Noah – Charles – Edward. Middle of Ellis. Date of birth is going to be [redacted] break. DC Soundex is going to be 3-6-8-2-5-9-4.
**Dispatch 1:** 29 negative. Has a prior in Montgomery ~~for second degree burglary~~. 42 is valid through DC.
**Dupree:** This is Fairmount Heights 4.
**Dispatch 1:** Go ahead.
**Dupree:** I missed that return.
**Dispatch 1:** 29 negative. There's a prior in Montgomery ~~for second degree burglary~~. 42 through DC is valid.

Estimated time of events: A definitive actual time cannot be provided as there is no document in discovery confirming the actual real time of the event as the time elapsed from radio run does not correlate with actual time.

**(2) "Officer's Dupree's notification that he needed backup"**

Transcription for timestamp 00:54 to 01:04
**Dupree:** This is Fairmount Heights 4.
**Dispatch 1:** Go ahead.
**Dupree:** [**Unintelligible**] unit [**unintelligible**].
**Dispatch 1:** Unit to back Fairmount Heights for Eastern and Sheriff.

Estimated time of events: As discussed above, no definitive actual time can be provided.

**(3) "Officer's Dupree's notification of OC deployment and need for 'fireboard' (EMS)"**

Transcription for timestamp 15:31 to 16:00

**Dupree:**      Fairmount Heights 4.
**Dispatch 2:**  Uh, D3, do you copy?
**Dispatch 1:**  **[Unintelligible]**.
**Dispatch 2:**  And, I'm sorry, the last [unintelligible] that was came up, try it again. Fairmount Heights 4, was that you?
**Dupree:**      **[Unintelligible]** Fireboard **[unintelligible]** OC deployment.
**Dispatch 2:**  Copy, OC deployment.

Estimated time of events: 2:01-2:03 am,
- 2:03 am, Report of Investigation, Table 1 to Incident Report, US4810;
- 2:01:57 a.m, Body Worn Camera Video of MPD Officer Lancelot Francioni, GX 101 at 23:45 play time, showing universal time of 2:01:57, dispatch communication with Officer Dupree following deployment of OC spray.

    In response to the Court's question, the time displayed on the radio run chart is the time duration on the radio run, which does not directly correlate with the actual real time.

# City of Seat Pleasant Police Department

### Devan A. Martin
### Chief of Police



# REPORT OF INTERNAL INVESTIGATION

Investigator: Lieutenant Kenneth Bragg #0147 (SPPD)

IA Case#: EI2019-003 Fairmount Heights Police Department

**Confidential**

US00004808



**CITY OF SEAT PLEASANT**
**POLICE DEPARTMENT**
DEVAN A. MARTIN, CHIEF OF POLICE

6011 ADDISON ROAD
SEAT PLEASANT, MD 20743
OFFICE NO. 301-499-8700
FAX NO. 301-499-8702



### 3.1.   Police Dispatcher

Certified audio recordings of all police radio communications were obtained from Prince George's County Public Safety Communications for this incident. The recordings contain all radio transmissions by the respondent, the police dispatcher, and assisting officers. The recording begins at 1:13 a.m. on August 4, 2019.

**Table 2:** describes the content of the radio transmissions. The time listed in column 1 lists the minutes and seconds after the beginning of the recording.

| Incident #PP19080400000157 Chronological List of Radio Transmissions | |
|---|---|
| Elapsed time from beginning of traffic stop. | Event |
| 00:00 | Respondent initiated a traffic stop |
| 00:56 | Respondent requested back up |
| 01:56 | Dispatch notified respondent that a female has called 911 and reported than an officer is trying to arrest her brother unlawfully. Respondent advised that the female is in her car and the driver is in custody. |
| 02:45 | Respondent requested a license check. Dispatch advised no warrants he has a prior history of B&E in Montgomery County and his DC license is valid. |
| 06:12 | Dispatch advised that a female called 911 and requested medical assistance for her son. Her son had been arrested and was having trouble breathing. |
| 07:26 | Respondent requested a female officer to respond to the scene. |
| 08:25 | Responded advised that he was ok. Dispatch confirmed that a female officer was en-route. |



**CITY OF SEAT PLEASANT**
**POLICE DEPARTMENT**
DEVAN A. MARTIN, CHIEF OF POLICE

6011 ADDISON ROAD
SEAT PLEASANT, MD 20743
OFFICE NO.  301-499-8700
FAX NO.  301-499-8702

| 09:47 | Dispatch asked if another Fairmount Heights officer was available for a loud noise music call at Sheriff Rd and Eastern Ave. |
| 12:38 | Dispatch advised H2, a female officer, to respond the traffic stop. |
| 13:17 | H10 advised H2 to disregard; he would call her.  H2 asked if there was a G sector unit available to transport.  Dispatch asked the respondent if he still needed a female officer.  He did not. |
| 13:42 | Dispatch asked for a G sector unit that was available to transport for the respondent.  G9 asked if G101 was still there; asked him to call him. |
| 15:32 | The respondent requested fireboard for an OC Deployment. |
| 16:07 | The respondent asked for more cars; stated he need help with a transport. |
| 16:39 | G9 and G1 advised that they respond. |
| 16:45 | 42G instructed any available officer to respond.  Dispatch advised him that 3 officers were already on scene and instructed G2 and G15 to respond. |
| 21:24 | The respondent advised that he was transporting a prisoner to DOC Upper Marlboro. |